FARMER *v.* BRENNAN, WARDEN, ET AL.

No. 92–7247.   Argued January 12, 1994—Decided June 6, 1994

826

SOUTER, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and BLACKMUN, STEVENS, O'CONNOR, SCALIA, KENNEDY, and GINSBURG, JJ., joined. BLACKMUN, J., *post*, p. 851, and STEVENS, J., *post*, p. 858, filed concurring opinions. THOMAS, J., filed an opinion concurring in the judgment, *post*, p. 858.

*Elizabeth Alexander* argued the cause for petitioner. With her on the briefs were *Alvin J. Bronstein,* by appointment of the Court, 510 U. S. 941, and *Steven R. Shapiro.*

*Deputy Solicitor General Bender* argued the cause for respondents. With him on the brief were *Solicitor General*

*Days, Assistant Attorney General Hunger, Amy L. Wax, Barbara L. Herwig,* and *Robert M. Loeb.**

JUSTICE SOUTER delivered the opinion of the Court.

A prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate violates the Eighth Amendment. See *Helling* v. *McKinney* 509 U. S. 25 (1993); *Wilson* v. *Seiter,* 501 U. S. 294 (1991); *Estelle* v. *Gamble,* 429

---

*Briefs of *amici curiae* urging reversal were filed for the Montana Defender Project by *Jeffrey T. Renz;* for the D. C. Prisoners' Legal Services Project, Inc., by *Alan A. Pemberton* and *Jonathan M. Smith;* and for Stop Prisoner Rape by *Frank M. Dunbaugh.*

*J. Joseph Curran, Jr.,* Attorney General of Maryland, and *Andrew H. Baida,* Assistant Attorney General, filed a brief for the State of Maryland et al. as *amici curiae* urging affirmance, joined by the Attorneys General and other officials for their respective States as follows: *Jimmy Evans,* Attorney General of Alabama, *Charles E. Cole,* Attorney General of Alaska, *Grant Woods,* Attorney General of Arizona, *Winston Bryant,* Attorney General of Arkansas, *Daniel E. Lungren,* Attorney General of California, *Charles M. Oberly III,* Attorney General of Delaware, *Michael J. Bowers,* Attorney General of Georgia, *Robert A. Marks,* Attorney General of Hawaii, *Pamela Carter,* Attorney General of Indiana, *Robert T. Stephan,* Attorney General of Kansas, *Chris Gorman,* Attorney General of Kentucky, *Scott Harshbarger,* Attorney General of Massachusetts, *Frank J. Kelley,* Attorney General of Michigan, *Hubert H. Humphrey III,* Attorney General of Minnesota, *Mike Moore,* Attorney General of Mississippi, *Jay Nixon,* Attorney General of Missouri, *Don Stenberg,* Attorney General of Nebraska, *Frankie Sue Del Papa,* Attorney General of Nevada, *Jeffrey R. Howard,* Attorney General of New Hampshire, *Fred DeVesa,* Acting Attorney General of New Jersey, *Michael F. Easley,* Attorney General of North Carolina, *Heidi Heitkamp,* Attorney General of North Dakota, *Lee Fisher,* Attorney General of Ohio, *Susan B. Loving,* Attorney General of Oklahoma, *Theodore R. Kulongoski,* Attorney General of Oregon, *Ernest D. Preate, Jr.,* Attorney General of Pennsylvania, *T. Travis Medlock,* Attorney General of South Carolina, *Mark Barnett,* Attorney General of South Dakota, *Charles W. Burson,* Attorney General of Tennessee, *Jan Graham,* Attorney General of Utah, *Jeffrey L. Amestoy,* Attorney General of Vermont, *Stephen D. Rosenthal,* Attorney General of Virginia, *James E. Doyle,* Attorney General of Wisconsin, and *Joseph B. Meyer,* Attorney General of Wyoming.

U. S. 97 (1976). This case requires us to define the term "deliberate indifference," as we do by requiring a showing that the official was subjectively aware of the risk.

## I

The dispute before us stems from a civil suit brought by petitioner, Dee Farmer, alleging that respondents, federal prison officials, violated the Eighth Amendment by their deliberate indifference to petitioner's safety. Petitioner, who is serving a federal sentence for credit card fraud, has been diagnosed by medical personnel of the Bureau of Prisons as a transsexual, one who has "[a] rare psychiatric disorder in which a person feels persistently uncomfortable about his or her anatomical sex," and who typically seeks medical treatment, including hormonal therapy and surgery, to bring about a permanent sex change. American Medical Association, Encyclopedia of Medicine 1006 (1989); see also American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 74–75 (3d rev. ed. 1987). For several years before being convicted and sentenced in 1986 at the age of 18, petitioner, who is biologically male, wore women's clothing (as petitioner did at the 1986 trial), underwent estrogen therapy, received silicone breast implants, and submitted to unsuccessful "black market" testicle-removal surgery. See *Farmer* v. *Haas,* 990 F. 2d 319, 320 (CA7 1993). Petitioner's precise appearance in prison is unclear from the record before us, but petitioner claims to have continued hormonal treatment while incarcerated by using drugs smuggled into prison, and apparently wears clothing in a feminine manner, as by displaying a shirt "off one shoulder," App. 112. The parties agree that petitioner "projects feminine characteristics." *Id.,* at 51, 74.

The practice of federal prison authorities is to incarcerate preoperative transsexuals with prisoners of like biological sex, see *Farmer* v. *Haas, supra,* at 320, and over time authorities housed petitioner in several federal facilities, sometimes

in the general male prison population but more often in segregation. While there is no dispute that petitioner was segregated at least several times because of violations of prison rules, neither is it disputed that in at least one penitentiary petitioner was segregated because of safety concerns. See *Farmer* v. *Carlson*, 685 F. Supp. 1335, 1342 (MD Pa. 1988).

On March 9, 1989, petitioner was transferred for disciplinary reasons from the Federal Correctional Institution in Oxford, Wisconsin (FCI-Oxford), to the United States Penitentiary in Terre Haute, Indiana (USP-Terre Haute). Though the record before us is unclear about the security designations of the two prisons in 1989, penitentiaries are typically higher security facilities that house more troublesome prisoners than federal correctional institutes. See generally Federal Bureau of Prisons, Facilities 1990. After an initial stay in administrative segregation, petitioner was placed in the USP-Terre Haute general population. Petitioner voiced no objection to any prison official about the transfer to the penitentiary or to placement in its general population. Within two weeks, according to petitioner's allegations, petitioner was beaten and raped by another inmate in petitioner's cell. Several days later, after petitioner claims to have reported the incident, officials returned petitioner to segregation to await, according to respondents, a hearing about petitioner's HIV-positive status.

Acting without counsel, petitioner then filed a *Bivens* complaint, alleging a violation of the Eighth Amendment. See *Bivens* v. *Six Unknown Fed. Narcotics Agents*, 403 U. S. 388 (1971); *Carlson* v. *Green*, 446 U. S. 14 (1980). As defendants, petitioner named respondents: the warden of USP-Terre Haute and the Director of the Bureau of Prisons (sued only in their official capacities); the warden of FCI-Oxford and a case manager there; and the Director of the Bureau of Prisons North Central Region Office and an official in that office (sued in their official and personal capacities). As later amended, the complaint alleged that respondents either

transferred petitioner to USP-Terre Haute or placed petitioner in its general population despite knowledge that the penitentiary had a violent environment and a history of inmate assaults, and despite knowledge that petitioner, as a transsexual who "projects feminine characteristics," would be particularly vulnerable to sexual attack by some USP-Terre Haute inmates. This allegedly amounted to a deliberately indifferent failure to protect petitioner's safety, and thus to a violation of petitioner's Eighth Amendment rights. Petitioner sought compensatory and punitive damages, and an injunction barring future confinement in any penitentiary, including USP-Terre Haute.[1]

Respondents filed a motion for summary judgment supported by several affidavits, to which petitioner responded with an opposing affidavit and a cross-motion for summary judgment; petitioner also invoked Federal Rule of Civil Procedure 56(f), asking the court to delay its ruling until respondents had complied with petitioner's pending request for production of documents. Respondents then moved for a protective order staying discovery until resolution of the issue of qualified immunity, raised in respondents' summary judgment motion.

Without ruling on respondents' request to stay discovery, the District Court denied petitioner's Rule 56(f) motion and granted summary judgment to respondents, concluding that there had been no deliberate indifference to petitioner's safety. The failure of prison officials to prevent inmate assaults violates the Eighth Amendment, the court stated, only if prison officials were "reckless in a criminal sense," meaning that they had "actual knowledge" of a potential danger. App. 124. Respondents, however, lacked the requisite

---

[1] Petitioner also sought an order requiring the Bureau of Prisons to place petitioner in a "co-correctional facility" (i. e., one separately housing male and female prisoners but allowing coeducational programming). Petitioner tells us, however, that the Bureau no longer operates such facilities, and petitioner apparently no longer seeks this relief.

knowledge, the court found. "[Petitioner] never expressed any concern for his safety to any of [respondents]. Since [respondents] had no knowledge of any potential danger to [petitioner], they were not deliberately indifferent to his safety." *Ibid.*

The United States Court of Appeals for the Seventh Circuit summarily affirmed without opinion. We granted certiorari, 510 U. S. 811 (1993), because Courts of Appeals had adopted inconsistent tests for "deliberate indifference." Compare, for example, *McGill* v. *Duckworth,* 944 F. 2d 344, 348 (CA7 1991) (holding that "deliberate indifference" requires a "subjective standard of recklessness"), cert. denied, 503 U. S. 907 (1992), with *Young* v. *Quinlan,* 960 F. 2d 351, 360–361 (CA3 1992) ("[A] prison official is deliberately indifferent when he knows or should have known of a sufficiently serious danger to an inmate").

## II

### A

The Constitution "does not mandate comfortable prisons," *Rhodes* v. *Chapman,* 452 U. S. 337, 349 (1981), but neither does it permit inhumane ones, and it is now settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," *Helling,* 509 U. S., at 31. In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners. See *Hudson* v. *McMillian,* 503 U. S. 1 (1992). The Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates," *Hudson* v. *Palmer,* 468 U. S. 517, 526–527 (1984). See *Helling, supra,*

at 31–32; *Washington* v. *Harper*, 494 U. S. 210, 225 (1990); *Estelle*, 429 U. S., at 103. Cf. *DeShaney* v. *Winnebago County Dept. of Social Servs.*, 489 U. S. 189, 198–199 (1989).

In particular, as the lower courts have uniformly held, and as we have assumed, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Cortes-Quinones* v. *Jimenez-Nettleship*, 842 F. 2d 556, 558 (CA1) (internal quotation marks and citation omitted), cert. denied, 488 U. S. 823 (1988);[2] see also *Wilson* v. *Seiter*, 501 U. S., at 303 (describing "the protection [an inmate] is afforded against other inmates" as a "conditio[n] of confinement" subject to the strictures of the Eighth Amendment). Having incarcerated "persons [with] demonstrated proclivit[ies] for antisocial criminal, and often violent, conduct," *Hudson* v. *Palmer, supra,* at 526, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course. Cf. *DeShaney, supra,* at 199–200; *Estelle, supra,* at 103–104. Prison conditions may be "restrictive and even harsh," *Rhodes, supra,* at 347, but gratuitously allowing the beating or rape of one prisoner by another serves no "legitimate penological objectiv[e]," *Hudson* v. *Palmer, supra,* at 548 (STEVENS, J., concurring in part and dissenting in part), any more than it squares with " 'evolving standards of decency,' " *Estelle,*

---

[2] Other Court of Appeals decisions to the same effect include *Villante* v. *Department of Corrections*, 786 F. 2d 516, 519 (CA2 1986); *Young* v. *Quinlan*, 960 F. 2d 351, 361–362 (CA3 1992); *Pressly* v. *Hutto*, 816 F. 2d 977, 979 (CA4 1987); *Alberti* v. *Klevenhagen*, 790 F. 2d 1220, 1224 (CA5 1986); *Roland* v. *Johnson*, 856 F. 2d 764, 769 (CA6 1988); *Goka* v. *Bobbitt*, 862 F. 2d 646, 649–650 (CA7 1988); *Martin* v. *White*, 742 F. 2d 469, 474 (CA8 1984); *Berg* v. *Kincheloe*, 794 F. 2d 457, 459 (CA9 1986); *Ramos* v. *Lamm*, 639 F. 2d 559, 572 (CA10 1980); *LaMarca* v. *Turner*, 995 F. 2d 1526, 1535 (CA11 1993); and *Morgan* v. *District of Columbia*, 824 F. 2d 1049, 1057 (CADC 1987).

*supra,* at 102 (quoting *Trop* v. *Dulles,* 356 U. S. 86, 101 (1958) (plurality opinion)). Being violently assaulted in prison is simply not "part of the penalty that criminal offenders pay for their offenses against society." *Rhodes, supra,* at 347.

It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety. Our cases have held that a prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, "sufficiently serious," *Wilson, supra,* at 298; see also *Hudson* v. *McMillian, supra,* at 5; a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities," *Rhodes, supra,* at 347. For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. See *Helling, supra,* at 35.[3]

The second requirement follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Wilson,* 501 U. S., at 297 (internal quotation marks, emphasis, and citations omitted). To violate the Cruel and Unusual Punishments Clause, a prison official must have a "sufficiently culpable state of mind." *Ibid.;* see also *id.,* at 302–303; *Hudson* v. *McMillian, supra,* at 8. In prison-conditions cases that state of mind is one of "deliberate indifference" to inmate health or safety, *Wilson, supra,* at 302–303; see also *Helling, supra,* at 34–35; *Hudson* v. *McMillian, supra,* at 5; *Estelle, supra,* at 106, a standard the parties agree governs the claim in this case. The parties disagree, however, on the proper test for deliberate indifference, which we must therefore undertake to define.

---

[3] At what point a risk of inmate assault becomes sufficiently substantial for Eighth Amendment purposes is a question this case does not present, and we do not address it.

## B

### 1

Although we have never paused to explain the meaning of the term "deliberate indifference," the case law is instructive. The term first appeared in the United States Reports in *Estelle* v. *Gamble*, 429 U. S., at 104, and its use there shows that deliberate indifference describes a state of mind more blameworthy than negligence. In considering the inmate's claim in *Estelle* that inadequate prison medical care violated the Cruel and Unusual Punishments Clause, we distinguished "deliberate indifference to serious medical needs of prisoners," *ibid.*, from "negligen[ce] in diagnosing or treating a medical condition," *id.*, at 106, holding that only the former violates the Clause. We have since read *Estelle* for the proposition that Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety." *Whitley* v. *Albers*, 475 U. S. 312, 319 (1986).

While *Estelle* establishes that deliberate indifference entails something more than mere negligence, the cases are also clear that it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. That point underlies the ruling that "application of the deliberate indifference standard is inappropriate" in one class of prison cases: when "officials stand accused of using excessive physical force." *Hudson* v. *McMillian*, 503 U. S., at 6–7; see also *Whitley, supra,* at 320. In such situations, where the decisions of prison officials are typically made " 'in haste, under pressure, and frequently without the luxury of a second chance,' " *Hudson* v. *McMillian, supra*, at 6 (quoting *Whitley, supra,* at 320), an Eighth Amendment claimant must show more than "indifference," deliberate or otherwise. The claimant must show that officials applied force "maliciously and sadistically for the very purpose of causing harm," 503 U. S., at 6 (internal quotation marks and citations omitted), or, as the Court also

put it, that officials used force with "a knowing willingness that [harm] occur," *id.*, at 7 (internal quotation marks and citation omitted). This standard of purposeful or knowing conduct is not, however, necessary to satisfy the *mens rea* requirement of deliberate indifference for claims challenging conditions of confinement; "the very high state of mind prescribed by *Whitley* does not apply to prison conditions cases." *Wilson, supra,* at 302–303.

With deliberate indifference lying somewhere between the poles of negligence at one end and purpose or knowledge at the other, the Courts of Appeals have routinely equated deliberate indifference with recklessness.[4] See, *e. g., La-Marca* v. *Turner,* 995 F. 2d 1526, 1535 (CA11 1993); *Manarite* v. *Springfield,* 957 F. 2d 953, 957 (CA1 1992); *Redman* v. *County of San Diego,* 942 F. 2d 1435, 1443 (CA9 1991); *Mc-Gill* v. *Duckworth,* 944 F. 2d, at 347; *Miltier* v. *Beorn,* 896 F. 2d 848, 851–852 (CA4 1990); *Martin* v. *White,* 742 F. 2d 469, 474 (CA8 1984); see also *Springfield* v. *Kibbe,* 480 U. S. 257, 269 (1987) (O'CONNOR, J., dissenting). It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.

That does not, however, fully answer the pending question about the level of culpability deliberate indifference entails, for the term recklessness is not self-defining. The civil law generally calls a person reckless who acts or (if the person has a duty to act) fails to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known. See Prosser and Keeton § 34, pp. 213–214; Restatement (Second) of Torts § 500 (1965). The criminal

---

[4] Between the poles lies "gross negligence" too, but the term is a "nebulous" one, in practice typically meaning little different from recklessness as generally understood in the civil law (which we discuss later in the text). See W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 34, p. 212 (5th ed. 1984) (hereinafter Prosser and Keeton).

law, however, generally permits a finding of recklessness only when a person disregards a risk of harm of which he is aware. See R. Perkins & R. Boyce, Criminal Law 850–851 (3d ed. 1982); J. Hall, General Principles of Criminal Law 115–116, 120, 128 (2d ed. 1960) (hereinafter Hall); American Law Institute, Model Penal Code § 2.02(2)(c), and Comment 3 (1985); but see *Commonwealth* v. *Pierce*, 138 Mass. 165, 175–178 (1884) (Holmes, J.) (adopting an objective approach to criminal recklessness). The standards proposed by the parties in this case track the two approaches (though the parties do not put it that way): petitioner asks us to define deliberate indifference as what we have called civil-law recklessness,[5] and respondents urge us to adopt an approach consistent with recklessness in the criminal law.[6]

We reject petitioner's invitation to adopt an objective test for deliberate indifference. We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to dis-

---

[5] See Reply Brief for Petitioner 5 (suggesting that a prison official is deliberately indifferent if he "knew facts which rendered an unreasonable risk obvious; under such circumstances, the defendant should have known of the risk and will be charged with such knowledge as a matter of law"); see also Brief for Petitioner 20–21.

[6] See Brief for Respondents 16 (asserting that deliberate indifference requires that a prison "official must know of the risk of harm to which an inmate is exposed").

courage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. See Prosser and Keeton §§ 2, 34, pp. 6, 213–214; see also Federal Tort Claims Act, 28 U. S. C. §§ 2671–2680; *United States* v. *Muniz,* 374 U. S. 150 (1963). But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

In *Wilson* v. *Seiter,* we rejected a reading of the Eighth Amendment that would allow liability to be imposed on prison officials solely because of the presence of objectively inhumane prison conditions. See 501 U. S., at 299–302. As we explained there, our "cases mandate inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Id.,* at 299. Although "state of mind," like "intent," is an ambiguous term that can encompass objectively defined levels of blameworthiness, see 1 W. LaFave & A. Scott, Substantive Criminal Law §§ 3.4, 3.5, pp. 296–300, 313–314 (1986) (hereinafter LaFave & Scott); *United States* v. *Bailey,* 444 U. S. 394, 404 (1980), it was no accident that we said in *Wilson* and repeated in later cases that Eighth Amendment suits against prison officials must satisfy a "subjective" requirement. See *Wilson, supra,* at 298; see also *Helling,* 509 U. S., at 35; *Hudson* v. *McMillian,* 503 U. S., at 8. It is true, as petitioner points out, that *Wilson* cited with approval Court of Appeals decisions applying an objective test for deliberate indifference to claims based on prison officials' failure to prevent inmate assaults. See 501 U. S., at 303 (citing *Cortes-Quinones* v. *Jimenez-Nettleship,* 842 F. 2d, at 560; and *Morgan* v. *District of Columbia,* 824 F. 2d 1049, 1057–1058 (CADC 1987)). But *Wilson* cited those cases for the proposition that the deliberate indifference standard applies to all prison-conditions claims, not to undo its holding that the

Eighth Amendment has a "subjective component." 501 U. S., at 298. Petitioner's purely objective test for deliberate indifference is simply incompatible with *Wilson*'s holding.

To be sure, the reasons for focusing on what a defendant's mental attitude actually was (or is), rather than what it should have been (or should be), differ in the Eighth Amendment context from that of the criminal law. Here, a subjective approach isolates those who inflict punishment; there, it isolates those against whom punishment should be inflicted. But the result is the same: to act recklessly in either setting a person must "consciously disregar[d]" a substantial risk of serious harm. Model Penal Code § 2.02(2)(c).

At oral argument, the Deputy Solicitor General advised against frank adoption of a criminal-law *mens rea* requirement, contending that it could encourage triers of fact to find Eighth Amendment liability only if they concluded that prison officials acted like criminals. See Tr. of Oral Arg. 39–40. We think this concern is misdirected. *Bivens* actions against federal prison officials (and their 42 U. S. C. § 1983 counterparts against state officials) are civil in character, and a court should no more allude to the criminal law when enforcing the Cruel and Unusual Punishments Clause than when applying the Free Speech and Press Clauses, where we have also adopted a subjective approach to recklessness. See *Harte-Hanks Communications, Inc.* v. *Connaughton*, 491 U. S. 657, 688 (1989) (holding that the standard for "reckless disregard" for the truth in a defamation action by a public figure "is a subjective one," requiring that "the defendant in fact entertained serious doubts as to the truth of his publication," or that "the defendant actually had a high degree of awareness of . . . probable falsity") (internal quotation marks and citations omitted).[7] That said, subjective recklessness as used in the criminal law is a familiar and workable stand-

---

[7] Appropriate allusions to the criminal law would, of course, be proper during criminal prosecutions under, for example, 18 U. S. C. § 242, which sets criminal penalties for deprivations of rights under color of law.

ard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for "deliberate indifference" under the Eighth Amendment.

2

Our decision that Eighth Amendment liability requires consciousness of a risk is thus based on the Constitution and our cases, not merely on a parsing of the phrase "deliberate indifference." And we do not reject petitioner's arguments for a thoroughly objective approach to deliberate indifference without recognizing that on the crucial point (whether a prison official must know of a risk, or whether it suffices that he should know) the term does not speak with certainty. Use of "deliberate," for example, arguably requires nothing more than an act (or omission) of indifference to a serious risk that is voluntary, not accidental. Cf. *Estelle*, 429 U. S., at 105 (distinguishing "deliberate indifference" from "accident" or "inadverten[ce]"). And even if "deliberate" is better read as implying knowledge of a risk, the concept of constructive knowledge is familiar enough that the term "deliberate indifference" would not, of its own force, preclude a scheme that conclusively presumed awareness from a risk's obviousness.

Because "deliberate indifference" is a judicial gloss, appearing neither in the Constitution nor in a statute, we could not accept petitioner's argument that the test for "deliberate indifference" described in *Canton* v. *Harris*, 489 U. S. 378 (1989), must necessarily govern here. In *Canton*, interpreting Rev. Stat. § 1979, 42 U. S. C. § 1983, we held that a municipality can be liable for failure to train its employees when the municipality's failure shows "a deliberate indifference to the rights of its inhabitants." 489 U. S., at 389 (internal quotation marks omitted). In speaking to the meaning of the term, we said that "it may happen that in light of the duties assigned to specific officers or employees the need for

more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.*, at 390; see also *id.*, at 390, n. 10 (elaborating). JUSTICE O'CONNOR's separate opinion for three Justices agreed with the Court's "obvious[ness]" test and observed that liability is appropriate when policymakers are "on actual or constructive notice" of the need to train, *id.*, at 396 (opinion concurring in part and dissenting in part). It would be hard to describe the *Canton* understanding of deliberate indifference, permitting liability to be premised on obviousness or constructive notice, as anything but objective.

*Canton*'s objective standard, however, is not an appropriate test for determining the liability of prison officials under the Eighth Amendment as interpreted in our cases. Section 1983, which merely provides a cause of action, "contains no state-of-mind requirement independent of that necessary to state a violation of the underlying constitutional right." *Daniels* v. *Williams*, 474 U. S. 327, 330 (1986). And while deliberate indifference serves under the Eighth Amendment to ensure that only inflictions of punishment carry liability, see *Wilson*, 501 U. S., at 299–300, the "term was used in the *Canton* case for the quite different purpose of identifying the threshold for holding a city responsible for the constitutional torts committed by its inadequately trained agents," *Collins* v. *Harker Heights*, 503 U. S. 115, 124 (1992), a purpose the *Canton* Court found satisfied by a test permitting liability when a municipality disregards "obvious" needs. Needless to say, moreover, considerable conceptual difficulty would attend any search for the subjective state of mind of a governmental entity, as distinct from that of a governmental official. For these reasons, we cannot accept petitioner's argument that *Canton* compels the conclu-

sion here that a prison official who was unaware of a substantial risk of harm to an inmate may nevertheless be held liable under the Eighth Amendment if the risk was obvious and a reasonable prison official would have noticed it.

We are no more persuaded by petitioner's argument that, without an objective test for deliberate indifference, prison officials will be free to ignore obvious dangers to inmates. Under the test we adopt today, an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. Cf. 1 C. Torcia, Wharton's Criminal Law § 27, p. 141 (14th ed. 1978); Hall 115. We doubt that a subjective approach will present prison officials with any serious motivation "to take refuge in the zone between 'ignorance of obvious risks' and 'actual knowledge of risks.'" Brief for Petitioner 27. Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, cf. Hall 118 (cautioning against "confusing a mental state with the proof of its existence"), and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. Cf. LaFave & Scott § 3.7, p. 335 ("[I]f the risk is obvious, so that a reasonable man would realize it, we might well infer that [the defendant] did in fact realize it; but the inference cannot be conclusive, for we know that people are not always conscious of what reasonable people would be conscious of"). For example, if an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of

fact to find that the defendant-official had actual knowledge of the risk." Brief for Respondents 22.[8]

Nor may a prison official escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial "risk of serious damage to his future health," *Helling*, 509 U. S., at 35, and it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk. See Brief for Respondents 15 (stating that a prisoner can establish exposure to a sufficiently serious risk of harm "by showing that he belongs to an identifiable group of prisoners who are frequently singled out for violent attack by other inmates"). If, for example, prison officials were aware that inmate "rape was so common and uncontrolled that some potential victims dared not sleep [but] instead . . . would leave

---

[8] While the obviousness of a risk is not conclusive and a prison official may show that the obvious escaped him, see *infra*, at 844, he would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist (as when a prison official is aware of a high probability of facts indicating that one prisoner has planned an attack on another but resists opportunities to obtain final confirmation; or when a prison official knows that some diseases are communicable and that a single needle is being used to administer flu shots to prisoners but refuses to listen to a subordinate who he strongly suspects will attempt to explain the associated risk of transmitting disease). When instructing juries in deliberate indifference cases with such issues of proof, courts should be careful to ensure that the requirement of subjective culpability is not lost. It is not enough merely to find that a reasonable person would have known, or that the defendant should have known, and juries should be instructed accordingly.

their beds and spend the night clinging to the bars nearest the guards' station," *Hutto* v. *Finney,* 437 U. S. 678, 681–682, n. 3 (1978), it would obviously be irrelevant to liability that the officials could not guess beforehand precisely who would attack whom. Cf. *Helling, supra,* at 33 (observing that the Eighth Amendment requires a remedy for exposure of inmates to "infectious maladies" such as hepatitis and venereal disease "even though the possible infection might not affect all of those exposed"); *Commonwealth* v. *Welansky,* 316 Mass. 383, 55 N. E. 2d 902 (1944) (affirming conviction for manslaughter under a law requiring reckless or wanton conduct of a nightclub owner who failed to protect patrons from a fire, even though the owner did not know in advance who would light the match that ignited the fire or which patrons would lose their lives); *State* v. *Julius,* 185 W. Va. 422, 431–432, 408 S. E. 2d 1, 10–11 (1991) (holding that a defendant may be held criminally liable for injury to an unanticipated victim).

Because, however, prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment, it remains open to the officials to prove that they were unaware even of an obvious risk to inmate health or safety. That a trier of fact may infer knowledge from the obvious, in other words, does not mean that it must do so. Prison officials charged with deliberate indifference might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent.

In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. A prison official's duty under the Eighth Amendment is to ensure " 'reasonable safety,' " *Helling, supra,* at 33; see also *Washington* v. *Har-*

*per*, 494 U. S., at 225; *Hudson* v. *Palmer*, 468 U. S., at 526–527, a standard that incorporates due regard for prison officials' "unenviable task of keeping dangerous men in safe custody under humane conditions," *Spain* v. *Procunier*, 600 F. 2d 189, 193 (CA9 1979) (Kennedy, J.); see also *Bell* v. *Wolfish*, 441 U. S. 520, 547–548, 562 (1979). Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause.

We address, finally, petitioner's argument that a subjective deliberate indifference test will unjustly require prisoners to suffer physical injury before obtaining court-ordered correction of objectively inhumane prison conditions. "It would," indeed, "be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them." *Helling, supra*, at 33. But nothing in the test we adopt today clashes with that common sense. Petitioner's argument is flawed for the simple reason that "[o]ne does not have to await the consummation of threatened injury to obtain preventive relief." *Pennsylvania* v. *West Virginia*, 262 U. S. 553, 593 (1923). Consistently with this principle, a subjective approach to deliberate indifference does not require a prisoner seeking "a remedy for unsafe conditions [to] await a tragic event [such as an] actua[l] assaul[t] before obtaining relief." *Helling, supra*, at 33–34.

In a suit such as petitioner's, insofar as it seeks injunctive relief to prevent a substantial risk of serious injury from ripening into actual harm, "the subjective factor, deliberate indifference, should be determined in light of the prison authorities' current attitudes and conduct," *Helling, supra*, at 36: their attitudes and conduct at the time suit is brought and persisting thereafter. An inmate seeking an injunction on the ground that there is "a contemporary violation of a nature likely to continue," *United States* v. *Oregon State Medical Soc.*, 343 U. S. 326, 333 (1952), must adequately

plead such a violation; to survive summary judgment, he must come forward with evidence from which it can be inferred that the defendant-officials were at the time suit was filed, and are at the time of summary judgment, knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so; and finally to establish eligibility for an injunction, the inmate must demonstrate the continuance of that disregard during the remainder of the litigation and into the future. In so doing, the inmate may rely, in the district court's discretion, on developments that postdate the pleadings and pretrial motions, as the defendants may rely on such developments to establish that the inmate is not entitled to an injunction.[9] See Fed. Rule Civ. Proc. 15(d); 6A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure §§ 1504–1510, pp. 177–211 (2d ed. 1990). If the court finds the Eighth Amendment's subjective and objective requirements satisfied, it may grant appropriate injunctive relief. See *Hutto* v. *Finney*, 437 U. S., at 685–688, and n. 9 (upholding order designed to halt "an ongoing violation" in prison conditions that included extreme overcrowding, rampant violence, insufficient food, and unsanitary conditions). Of course, a district court should approach issuance of injunctive orders with the usual

---

[9] If, for example, the evidence before a district court establishes that an inmate faces an objectively intolerable risk of serious injury, the defendants could not plausibly persist in claiming lack of awareness, any more than prison officials who state during the litigation that they will not take reasonable measures to abate an intolerable risk of which they are aware could claim to be subjectively blameless for purposes of the Eighth Amendment, and in deciding whether an inmate has established a continuing constitutional violation a district court may take such developments into account. At the same time, even prison officials who had a subjectively culpable state of mind when the lawsuit was filed could prevent issuance of an injunction by proving, during the litigation, that they were no longer unreasonably disregarding an objectively intolerable risk of harm and that they would not revert to their obduracy upon cessation of the litigation.

caution, see *Bell* v. *Wolfish, supra,* at 562 (warning courts against becoming "enmeshed in the minutiae of prison operations"), and may, for example, exercise its discretion if appropriate by giving prison officials time to rectify the situation before issuing an injunction.

That prison officials' "current attitudes and conduct," *Helling,* 509 U. S., at 36, must be assessed in an action for injunctive relief does not mean, of course, that inmates are free to bypass adequate internal prison procedures and bring their health and safety concerns directly to court. "An appeal to the equity jurisdiction conferred on federal district courts is an appeal to the sound discretion which guides the determinations of courts of equity," *Meredith* v. *Winter Haven,* 320 U. S. 228, 235 (1943), and any litigant making such an appeal must show that the intervention of equity is required. When a prison inmate seeks injunctive relief, a court need not ignore the inmate's failure to take advantage of adequate prison procedures, and an inmate who needlessly bypasses such procedures may properly be compelled to pursue them. Cf. 42 U. S. C. § 1997e (authorizing district courts in § 1983 actions to require inmates to exhaust "such plain, speedy, and effective administrative remedies as are available"). Even apart from the demands of equity, an inmate would be well advised to take advantage of internal prison procedures for resolving inmate grievances. When those procedures produce results, they will typically do so faster than judicial processes can. And even when they do not bring constitutionally required changes, the inmate's task in court will obviously be much easier.

Accordingly, we reject petitioner's arguments and hold that a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.

## III

### A

Against this backdrop, we consider whether the District Court's disposition of petitioner's complaint, summarily affirmed without briefing by the Court of Appeals for the Seventh Circuit, comports with Eighth Amendment principles. We conclude that the appropriate course is to remand.

In granting summary judgment to respondents on the ground that petitioner had failed to satisfy the Eighth Amendment's subjective requirement, the District Court may have placed decisive weight on petitioner's failure to notify respondents of a risk of harm. That petitioner "never expressed any concern for his safety to any of [respondents]," App. 124, was the only evidence the District Court cited for its conclusion that there was no genuine dispute about respondents' assertion that they "had no knowledge of any potential danger to [petitioner]," *ibid.* But with respect to each of petitioner's claims, for damages and for injunctive relief, the failure to give advance notice is not dispositive. Petitioner may establish respondents' awareness by reliance on any relevant evidence. See *supra,* at 842.

The summary judgment record does not so clearly establish respondents' entitlement to judgment as a matter of law on the issue of subjective knowledge that we can simply assume the absence of error below. For example, in papers filed in opposition to respondents' summary-judgment motion, petitioner pointed to respondents' admission that petitioner is a "non-violent" transsexual who, because of petitioner's "youth and feminine appearance" is "likely to experience a great deal of sexual pressure" in prison. App. 50–51, 73–74. And petitioner recounted a statement by one of the respondents, then warden of the penitentiary in Lewisburg, Pennsylvania, who told petitioner that there was "a high probability that [petitioner] could not safely function at USP-Lewisburg," *id.,* at 109, an incident confirmed in a

published District Court opinion. See *Farmer* v. *Carlson,*
685 F. Supp., at 1342; see also *ibid.* ("Clearly, placing plaintiff,
a twenty-one year old transsexual, into the general popula-
tion at [USP-]Lewisburg, a [high-]security institution, could
pose a significant threat to internal security in general and
to plaintiff in particular").

We cannot, moreover, be certain that additional evidence
is unavailable to petitioner because in denying petitioner's
Rule 56(f) motion for additional discovery the District Court
may have acted on a mistaken belief that petitioner's failure
to notify was dispositive. Petitioner asserted in papers ac-
companying the Rule 56(f) motion that the requested docu-
ments would show that "each defendant had knowledge that
USP-Terre Haute was and is, a violent institution with a
history of sexual assault, stabbings, etc., [and that] each de-
fendant showed reckless disregard for my safety by desig-
nating me to said institution knowing that I would be sexu-
ally assaulted." App. 105–106. But in denying the Rule
56(f) motion, the District Court stated that the requested
documents were "not shown by plaintiff to be necessary to
oppose defendants' motion for summary judgment," *id.,* at
121, a statement consistent with the erroneous view that fail-
ure to notify was fatal to petitioner's complaint.

Because the District Court may have mistakenly thought
that advance notification was a necessary element of an
Eighth Amendment failure-to-protect claim, we think it
proper to remand for reconsideration of petitioner's Rule
56(f) motion and, whether additional discovery is permitted
or not, for application of the Eighth Amendment principles
explained above.[10]

---

[10] The District Court's opinion is open to the reading that it required not
only advance notification of a substantial risk of assault, but also advance
notification of a substantial risk of assault posed by a particular fellow
prisoner. See App. 124 (referring to "a specific threat to [a prisoner's]
safety"). The Eighth Amendment, however, imposes no such require-
ment. See *supra,* at 842–844.

## B

Respondents urge us to affirm for reasons not relied on below, but neither of their contentions is so clearly correct as to justify affirmance.

With respect to petitioner's damages claim, respondents argue that the officials sued in their individual capacities (officials at FCI-Oxford and the Bureau of Prisons North Central Region office) were alleged to be liable only for their transfer of petitioner from FCI-Oxford to USP-Terre Haute, whereas petitioner "nowhere alleges any reason for believing that these officials, who had no direct responsibility for administering the Terre Haute institution, would have had knowledge of conditions within that institution regarding danger to transsexual inmates." Brief for Respondents 27–28. But petitioner's Rule 56(f) motion alleged just that. Though respondents suggest here that petitioner offered no factual basis for that assertion, that is not a ground on which they chose to oppose petitioner's Rule 56(f) motion below and, in any event, is a matter for the exercise of the District Court's judgment, not ours. Finally, to the extent respondents seek affirmance here on the ground that officials at FCI-Oxford and the Bureau of Prisons regional office had no power to control prisoner placement at Terre Haute, the record gives at least a suggestion to the contrary; the affidavit of one respondent, the warden of USP-Terre Haute, states that after having been at USP-Terre Haute for about a month petitioner was placed in administrative segregation "pursuant to directive from the North Central Regional Office" and a "request . . . by staff at FCI-Oxford." App. 94–95. Accordingly, though we do not reject respondents' arguments about petitioner's claim for damages, the record does not permit us to accept them as a basis for affirmance when they were not relied upon below. Respondents are free to develop this line of argument on remand.

With respect to petitioner's claim for injunctive relief, respondents argued in their merits brief that the claim was

"foreclosed by [petitioner's] assignment to administrative detention status because of his high-risk HIV-positive condition, . . . as well as by the absence of any allegation . . . that administrative detention status poses any continuing threat of physical injury to him." Brief for Respondents 28–29. At oral argument, however, the Deputy Solicitor General informed us that petitioner was no longer in administrative detention, having been placed in the general prison population of a medium-security prison. Tr. of Oral Arg. 25–26. He suggested that affirmance was nevertheless proper because "there is no present threat" that petitioner will be placed in a setting where he would face a "continuing threat of physical injury," id., at 26, but this argument turns on facts about the likelihood of a transfer that the District Court is far better placed to evaluate than we are. We leave it to respondents to present this point on remand.

## IV

The judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

JUSTICE BLACKMUN, concurring.

I agree with JUSTICE STEVENS that inhumane prison conditions violate the Eighth Amendment even if no prison official has an improper, subjective state of mind. This Court's holding in *Wilson* v. *Seiter*, 501 U. S. 294 (1991), to the effect that barbaric prison conditions may be beyond the reach of the Eighth Amendment if no prison official can be deemed individually culpable, in my view is insupportable in principle and is inconsistent with our precedents interpreting the Cruel and Unusual Punishments Clause. Whether the Constitution has been violated "should turn on the character of the punishment rather than the motivation of the individual who inflicted it." *Estelle* v. *Gamble*, 429 U. S. 97, 116

(1976) (STEVENS, J., dissenting). *Wilson* v. *Seiter* should be overruled.

Although I do not go along with the Court's reliance on *Wilson* in defining the "deliberate indifference" standard, I join the Court's opinion, because it creates no new obstacles for prison inmates to overcome, and it sends a clear message to prison officials that their affirmative duty under the Constitution to provide for the safety of inmates is not to be taken lightly. Under the Court's decision today, prison officials may be held liable for failure to remedy a risk so obvious and substantial that the officials must have known about it, see *ante,* at 842–843, and prisoners need not "'await a tragic event [such as an] actua[l] assaul[t] before obtaining relief,'" *ante,* at 845.

## I

Petitioner is a transsexual who is currently serving a 20-year sentence in an all-male federal prison for credit card fraud. Although a biological male, petitioner has undergone treatment for silicone breast implants and unsuccessful surgery to have his testicles removed. Despite his overtly feminine characteristics, and his previous segregation at a different federal prison because of safety concerns, see *Farmer* v. *Carlson,* 685 F. Supp. 1335, 1342 (MD Pa. 1988), prison officials at the United States Penitentiary in Terre Haute, Indiana, housed him in the general population of that maximum-security prison. Less than two weeks later, petitioner was brutally beaten and raped by another inmate in petitioner's cell.

Homosexual rape or other violence among prison inmates serves absolutely no penological purpose. See *Rhodes* v. *Chapman,* 452 U. S. 337, 345–346 (1981), citing *Gregg* v. *Georgia,* 428 U. S. 153, 183 (1976) (joint opinion) (the Eighth Amendment prohibits all punishment, physical and mental, which is "totally without penological justification"). "Such brutality is the equivalent of torture, and is offensive to any modern standard of human dignity." *United States* v. *Bai-*

*ley,* 444 U. S. 394, 423 (1980) (BLACKMUN, J., dissenting).
The horrors experienced by many young inmates, particu-
larly those who, like petitioner, are convicted of nonviolent
offenses, border on the unimaginable. Prison rape not only
threatens the lives of those who fall prey to their aggressors,
but is potentially devastating to the human spirit. Shame,
depression, and a shattering loss of self-esteem accompany
the perpetual terror the victim thereafter must endure.
See Note, Rape in Prison and AIDS: A Challenge for the
Eighth Amendment Framework of *Wilson v. Seiter,* 44 Stan.
L. Rev. 1541, 1545 (1992). Unable to fend for himself with-
out the protection of prison officials, the victim finds himself
at the mercy of larger, stronger, and ruthless inmates. Al-
though formally sentenced to a term of incarceration, many
inmates discover that their punishment, even for nonviolent
offenses like credit card fraud or tax evasion, degenerates
into a reign of terror unmitigated by the protection suppos-
edly afforded by prison officials.*

The fact that our prisons are badly overcrowded and un-
derstaffed may well explain many of the shortcomings of our
penal systems. But our Constitution sets minimal stand-
ards governing the administration of punishment in this
country, see *Rhodes,* 452 U. S., at 347, and thus it is no an-
swer to the complaints of the brutalized inmate that the re-

---

*Numerous court opinions document the pervasive violence among in-
mates in our state and federal prisons. See, *e. g., United States* v. *Bailey,*
444 U. S. 394, 421 (1980) (BLACKMUN, J., dissenting); *McGill* v. *Duckworth,*
944 F. 2d 344, 348 (CA7 1991), cert. denied, 503 U. S. 907 (1992); *Redman*
v. *County of San Diego,* 942 F. 2d 1435 (CA9 1991) (en banc), cert. denied,
502 U. S. 1074 (1992); *Hassine* v. *Jeffes,* 846 F. 2d 169, 172 (CA3 1988);
*Alberti* v. *Klevenhagen,* 790 F. 2d 1220, 1222 (CA5), clarified, 799 F. 2d 992
(CA5 1986); *Jones* v. *Diamond,* 636 F. 2d 1364, 1372 (CA5 1981), overruled
on other grounds, 790 F. 2d 1174 (CA5 1986); *Withers* v. *Levine,* 615 F. 2d
158, 161 (CA4), cert. denied, 449 U. S. 849 (1980); *Little* v. *Walker,* 552
F. 2d 193, 194 (CA7 1977), cert. denied, 435 U. S. 932 (1978); *Holt* v. *Sarver,*
442 F. 2d 304, 308 (CA8 1971), later proceeding *sub nom. Hutto* v. *Finney,*
437 U. S. 678 (1978).

sources are unavailable to protect him from what, in reality, is nothing less than torture. I stated in dissent in *United States* v. *Bailey:*

> "It is society's responsibility to protect the life and health of its prisoners. '[W]hen a sheriff or a marshall *[sic]* takes a man from the courthouse in a prison van and transports him to confinement for two or three or ten years, *this is our act. We* have tolled the bell for him. And whether we like it or not, we have made him our collective responsibility. We are free to do something about him; he is not' (emphasis in original). Address by THE CHIEF JUSTICE, 25 Record of the Assn. of the Bar of the City of New York 14, 17 (Mar. 1970 Supp.)." 444 U. S., at 423.

The Court in *Wilson* v. *Seiter*, 501 U. S. 294 (1991), held that any pain and suffering endured by a prisoner that is not formally a part of his sentence—no matter how severe or unnecessary—will not be held violative of the Cruel and Unusual Punishments Clause unless the prisoner establishes that some prison official intended the harm. The Court justified this remarkable conclusion by asserting that only pain that is intended by a state actor to be punishment is punishment. See *id.*, at 300 ("The source of the intent requirement is not the predilections of this Court, but the Eighth Amendment itself, which bans only cruel and unusual *punishment.* If the pain inflicted is not formally meted out as *punishment* by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify") (emphasis in original).

The Court's analysis is fundamentally misguided; indeed it defies common sense. "Punishment" does not necessarily imply a culpable state of mind on the part of an identifiable punisher. A prisoner may experience punishment when he suffers "severe, rough, or disastrous treatment," see, *e. g.,* Webster's Third New International Dictionary 1843 (1961),

regardless of whether a state actor intended the cruel treatment to chastise or deter. See also Webster's New International Dictionary of the English Language 1736 (1923) (defining punishment as "[a]ny pain, suffering, or loss inflicted on *or suffered by* a person because of a crime or evil-doing") (emphasis added); cf. *Wilson*, 501 U. S., at 300, citing *Duckworth* v. *Franzen*, 780 F. 2d 645, 652 (CA7 1985) ("'The infliction of punishment is a deliberate act intended to chastise or deter'"), cert. denied, 479 U. S. 816 (1986).

The Court's unduly narrow definition of punishment blinds it to the reality of prison life. Consider, for example, a situation in which one individual is sentenced to a period of confinement at a relatively safe, well-managed prison, complete with tennis courts and cable television, while another is sentenced to a prison characterized by rampant violence and terror. Under such circumstances, it is natural to say that the latter individual was subjected to a more extreme punishment. It matters little that the sentencing judge did not specify to which prison the individuals would be sent; nor is it relevant that the prison officials did not intend either individual to suffer any attack. The conditions of confinement, whatever the reason for them, resulted in differing punishment for the two convicts.

*Wilson*'s myopic focus on the intentions of *prison officials* is also mistaken. Where a legislature refuses to fund a prison adequately, the resulting barbaric conditions should not be immune from constitutional scrutiny simply because no prison official acted culpably. *Wilson* failed to recognize that "state-sanctioned punishment consists not so much of specific acts attributable to individual state officials, but more of a cumulative agglomeration of action (and inaction) on an institutional level." The Supreme Court—Leading Cases, 105 Harv. L. Rev. 177, 243 (1991). The responsibility for subminimal conditions in any prison inevitably is diffuse, and often borne, at least in part, by the legislature. Yet, regardless of what state actor or institution caused the harm

and with what intent, the experience of the inmate is the same. A punishment is simply no less cruel or unusual because its harm is unintended. In view of this obvious fact, there is no reason to believe that, in adopting the Eighth Amendment, the Framers intended to prohibit cruel and unusual punishments only when they were inflicted intentionally. As Judge Noonan has observed:

> "The Framers were familiar from their wartime experience of British prisons with the kind of cruel punishment administered by a warden with the mentality of a Captain Bligh. *But they were also familiar with the cruelty that came from bureaucratic indifference to the conditions of confinement.* The Framers understood that cruel and unusual punishment can be administered by the failure of those in charge to give heed to the impact of their actions on those within their care." *Jordan* v. *Gardner*, 986 F. 2d 1521, 1544 (CA9 1993) (concurring opinion) (citations omitted) (emphasis added).

Before *Wilson*, it was assumed, if not established, that the conditions of confinement are themselves part of the punishment, even if not specifically "meted out" by a statute or judge. See *Wilson*, 501 U. S., 306–309 (White, J., concurring in judgment), citing *Hutto* v. *Finney*, 437 U. S. 678 (1978); *Rhodes* v. *Chapman*, 452 U. S. 337 (1981). We examined only the objective severity of the conditions of confinement in the pre-*Wilson* cases, not the subjective intent of government officials, as we found that "[a]n express intent to inflict unnecessary pain is not required, . . . and *harsh 'conditions of confinement' may constitute cruel and unusual punishment* unless such conditions 'are part of the penalty that criminal offenders pay for their offenses against society.'" *Whitley* v. *Albers*, 475 U. S. 312, 319 (1986), quoting *Rhodes*, 452 U. S., at 347 (emphasis added). This initial approach, which employed an objective standard to chart the boundaries of the Eighth Amendment, reflected the practical real-

ity that "intent simply is not very meaningful when considering a challenge to an institution, such as a prison system," *Wilson*, 501 U. S., at 310 (White, J., concurring in judgment). It also, however, demonstrated a commitment to the principles underlying the Eighth Amendment. The Cruel and Unusual Punishments Clause was not adopted to protect prison officials with arguably benign intentions from lawsuits. The Eighth Amendment guarantees each prisoner that reasonable measures will be taken to ensure his safety. Where a prisoner can prove that no such reasonable steps were taken and, as a result, he experienced severe pain or suffering without any penological justification, the Eighth Amendment is violated regardless of whether there is an easily identifiable wrongdoer with poor intentions.

## II

Though I believe *Wilson* v. *Seiter* should be overruled, and disagree with the Court's reliance upon that case in defining the "deliberate indifference" standard, I nonetheless join the Court's opinion. Petitioner never challenged this Court's holding in *Wilson* or sought reconsideration of the theory upon which that decision is based. More importantly, the Court's opinion does not extend *Wilson* beyond its ill-conceived boundaries or erect any new obstacles for prison inmates to overcome in seeking to remedy cruel and unusual conditions of confinement. The Court specifically recognizes that "[h]aving incarcerated 'persons [with] demonstrated proclivities for criminally antisocial and, in many cases, violent conduct,' [and] having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Ante*, at 833. The Court further acknowledges that prison rape is not constitutionally tolerable, see *ante*, at 834 ("Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society' "), and it

clearly states that prisoners can obtain relief before being victimized, see *ante*, at 845 ("[A] subjective approach to deliberate indifference does not require a prisoner seeking 'a remedy for unsafe conditions [to] await a tragic event [such as an] actua[l] assaul[t] before obtaining relief'"). Finally, under the Court's holding, prison officials may be held liable for failure to remedy a risk of harm so obvious and substantial that the prison officials must have known about it, see *ante*, at 842–843. The opinion's clear message is that prison officials must fulfill their affirmative duty under the Constitution to prevent inmate assault, including prison rape, or otherwise face a serious risk of being held liable for damages, see *ante*, at 842–844, or being required by a court to rectify the hazardous conditions, see *ante*, at 845–847. As much as is possible within the constraints of *Wilson* v. *Seiter*, the Court seeks to ensure that the conditions in our Nation's prisons in fact comport with the "contemporary standard of decency" required by the Eighth Amendment. See *DeShaney* v. *Winnebago County Dept. of Social Servs.*, 489 U. S. 189, 198–200 (1989). Short of overruling *Wilson* v. *Seiter*, the Court could do no better.

JUSTICE STEVENS, concurring.

While I continue to believe that a state official may inflict cruel and unusual punishment without any improper subjective motivation, see *Estelle* v. *Gamble*, 429 U. S. 97, 116–117 (1976) (dissenting opinion); *Wilson* v. *Seiter*, 501 U. S. 294, 306–307 (1991) (White, J., concurring in judgment), I join JUSTICE SOUTER's thoughtful opinion because it is faithful to our precedents.

JUSTICE THOMAS, concurring in the judgment.

Prisons are necessarily dangerous places; they house society's most antisocial and violent people in close proximity with one another. Regrettably, "[s]ome level of brutality and sexual aggression among [prisoners] is inevitable no

matter what the guards do . . . unless all prisoners are locked in their cells 24 hours a day and sedated." *McGill* v. *Duckworth,* 944 F. 2d 344, 348 (CA7 1991). Today, in an attempt to rectify such unfortunate conditions, the Court further refines the "National Code of Prison Regulation," otherwise known as the Cruel and Unusual Punishments Clause. *Hudson* v. *McMillian,* 503 U. S. 1, 28 (1992) (THOMAS, J., dissenting).

I adhere to my belief, expressed in *Hudson* and *Helling* v. *McKinney,* 509 U. S. 25 (1993) (THOMAS, J., dissenting), that "judges or juries—but not jailers—impose 'punishment.'" *Id.,* at 40. "[P]unishment," from the time of the Founding through the present day, "has always meant a 'fine, penalty, or confinement inflicted upon a person by the authority of the law and the judgment and sentence of a court, for some crime or offense committed by him.'" *Id.,* at 38 (quoting Black's Law Dictionary 1234 (6th ed. 1990)). See also 2 T. Sheridan, A General Dictionary of the English Language (1780) (defining "punishment" as "[a]ny infliction imposed in vengeance of a crime"). Conditions of confinement are not punishment in any recognized sense of the term, unless imposed as part of a sentence. See *Helling, supra,* at 42 (THOMAS, J., dissenting). As an original matter, therefore, this case would be an easy one for me: Because the unfortunate attack that befell petitioner was not part of his sentence, it did not constitute "punishment" under the Eighth Amendment.

When approaching this case, however, we do not write on a clean slate. Beginning with *Estelle* v. *Gamble,* 429 U. S. 97 (1976), the Court's prison condition jurisprudence has been guided, not by the text of the Constitution, but rather by "evolving standards of decency that mark the progress of a maturing society." *Id.,* at 102 (internal quotation marks omitted). See also *ante,* at 833–834; *Helling, supra; Hudson, supra.* I continue to doubt the legitimacy of that mode of constitutional decisionmaking, the logical result of which,

in this context, is to transform federal judges into superintendents of prison conditions nationwide. See *Helling, supra*, at 40–41 (THOMAS, J., dissenting). Although *Estelle* loosed the Eighth Amendment from its historical moorings, the Court is now unwilling to accept the full consequences of its decision and therefore resorts to the "subjective" (state of mind) component of post-*Estelle* Eighth Amendment analysis in an attempt to contain what might otherwise be unbounded liability for prison officials under the Cruel and Unusual Punishments Clause. Cf. *McGill, supra*, at 348.

Although I disagree with the constitutional predicate of the Court's analysis, I share the Court's view that petitioner's theory of liability—that a prison official can be held liable for risks to prisoner safety of which he was ignorant but should have known—fails under even "a straightforward application of *Estelle*." *Helling, supra*, at 42 (THOMAS, J., dissenting). In adopting the "deliberate indifference" standard for challenges to prison conditions, *Estelle* held that mere "inadverten[ce]" or "negligen[ce]" does not violate the Eighth Amendment. 429 U. S., at 105–106. "From the outset, thus, we specified that the Eighth Amendment does not apply to every deprivation, or even every unnecessary deprivation, suffered by a prisoner, but *only* that narrow class of deprivations involving 'serious' injury inflicted by prison officials acting with a culpable state of mind." *Hudson, supra*, at 20 (THOMAS, J., dissenting). We reiterated this understanding in *Wilson* v. *Seiter*, 501 U. S. 294, 305 (1991), holding that "mere negligence" does not constitute deliberate indifference under *Estelle*. See also, *e. g., Whitley* v. *Albers*, 475 U. S. 312, 319 (1986). Petitioner's suggested "should have known" standard is nothing but a negligence standard, as the Court's discussion implicitly assumes. *Ante*, at 837–839. Thus, even under *Estelle*, petitioner's theory of liability necessarily fails.

The question remains, however, what state of mind *is* sufficient to constitute deliberate indifference under *Estelle*.

Given my serious doubts concerning the correctness of *Estelle* in extending the Eighth Amendment to cover challenges to conditions of confinement, I believe the scope of the *Estelle* "right" should be confined as narrowly as possible. Cf. *Helling, supra,* at 42 (THOMAS, J., dissenting). In *Wilson,* the Court has already held that the highest subjective standard known to our Eighth Amendment jurisprudence—"maliciou[s] and sadisti[c]" action "for the very purpose of causing harm," *Whitley, supra,* at 320–321 (internal quotation marks omitted)—"does not apply to prison conditions cases." *Wilson, supra,* at 303. The Court today adopts the next highest level of subjective intent, actual knowledge of the type sufficient to constitute recklessness in the criminal law, *ante,* at 837, 839–840, noting that "due regard" is appropriate "for prison officials' 'unenviable task of keeping dangerous men in safe custody under humane conditions.'"[1] *Ante,* at 845 (quoting *Spain* v. *Procunier,* 600 F. 2d 189, 193 (CA9 1979) (Kennedy, J.)).

Even though the Court takes a step in the right direction by adopting a restrictive definition of deliberate indifference, I cannot join the Court's opinion. For the reasons expressed more fully in my dissenting opinions in *Hudson* and *Helling,* I remain unwilling to subscribe to the view, adopted by *ipse dixit* in *Estelle,* that the Eighth Amendment regulates prison conditions not imposed as part of a sentence. Indeed, "[w]ere the issue squarely presented, . . . I might vote to overrule *Estelle.*" *Helling,* 509 U. S., at 42 (THOMAS, J., dissenting). Nonetheless, the issue is not squarely presented

---

[1] The facts of this case demonstrate how difficult that task can be. When petitioner was taken out of general prison population for security reasons at United States Penitentiary-Lewisburg, he asserted that he "d[id] not need extra security precautions" and filed suit alleging that placing him in solitary confinement was unconstitutional. See *Farmer* v. *Carlson,* 685 F. Supp. 1335, 1342 (MD Pa. 1988). Petitioner's present claim, oddly enough, is essentially that *leaving him* in general prison population was unconstitutional because it subjected him to a risk of sexual assault.

in this case. Respondents have not asked us to revisit *Estelle*, and no one has briefed or argued the question. In addition to these prudential concerns, *stare decisis* counsels hesitation in overruling dubious precedents. See 509 U. S., at 42. For these reasons, I concur in the Court's judgment.[2] In doing so, however, I remain hopeful that in a proper case the Court will reconsider *Estelle* in light of the constitutional text and history.

---

[2] I do not read the remand portion of the Court's opinion to intimate that the courts below reached the wrong result, especially because the Seventh Circuit has long followed the rule of law the Court lays down today. See *McGill* v. *Duckworth*, 944 F. 2d 344 (CA7 1991); *Duckworth* v. *Franzen*, 780 F. 2d 645 (CA7 1985). Rather, I regard it as a cautionary measure undertaken merely to give the Court of Appeals an opportunity to decide in the first instance whether the District Court erroneously gave dispositive weight to petitioner's failure to complain to prison officials that he believed himself at risk of sexual assault in the general prison population. *Ante*, at 849. If, on remand, the Seventh Circuit concludes that the District Court did not, nothing in the Court's opinion precludes the Seventh Circuit from summarily affirming the entry of summary judgment in respondents' favor.