[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Habeas Corpus Petition, Denied
In this action, the petitioner seeks a writ of habeas corpus based upon a claim that he is being denied adequate medical treatment.
For the purposes of this hearing the facts as determined by the Court are as follows:[1]
 1. On or about June 14, 2001, the petitioner stumbled into a hole while he was running on a running track surface while he was confined in custody.
 2. The petitioner heard a popping and tearing sound at the time that he fell.
 3. After his fall the petitioner complained of pain to his lower back and knee.
 4. The petitioner went to "medical" and was treated for his injuries. Joseph Esposito, M.D. ordered crutches, ice packs, x-ray of the right knee, Motrin in 400mg doses. He further ordered the petitioner to keep his leg extended and to return for a follow-up visit on Monday.
 5. On June 18, 2001, Joseph Esposito, M.D. saw the petitioner and instructed him to use the bottom bunk, ambulate in a wheelchair or walk with crutches. He further instructed the petitioner to wear a brace and to take Motrin and return for another visit on Friday [June 22].
 6. On June 22, 2001, the petitioner saw Joseph Esposito, M.D., and he was informed that he should CT Page 16982 continue to wear the brace, use crutches, and continue using Motrin and not to participate in sports.
 7. On June 29, 2001, the petitioner saw Dr. Esposito again and was prescribed Naproxin in 500mg doses. He also ordered x-rays for the lumbar spine and pelvic area.
8. The petitioner reinjured his knee on or about July 3, 2001.
 9. On July 4, 2001, the petitioner saw Joseph Esposito, M.D., and he was instructed to ambulate in a wheelchair and was prescribed Motrin 200mg for five days.
 10. The petitioner's lumbar spine was x-rayed on or about July 5, 2001. The radiologist, Harold Moskowitz, M.D., concluded that the x-ray films showed a "normal lumbar spine."
 11. On or about July 16, 2001, the respondent completed a Connecticut Department of Correction Transfer Summary. The Summary indicated that the petitioner's immediate health needs were his right knee and pain in his lower back and that the petitioner was using crutches. The document further indicates that the petitioner did not have any swelling in his knee. The document also indicates that the petitioner was taking Motrin in two hundred mg doses for back and knee pain care.
 12. On or about July 28, 2001, the respondent completed a Connecticut Department of Correction Transfer Summary indicating that the petitioner was placed in the infirmary for a "medical" placement. The document does not indicate what the nature of the medical problem was.
 13. On or about August 8, 2001, Joseph Esposito, M.D., prescribed the petitioner Motrin in 400mg doses.
 14. On or about August 16, 2001, the respondent completed a Connecticut Department of Correction CT Page 16983 Transfer Summary indicating that the petitioner reported to the infirmary complaining of dizziness since an alleged August 8, 2001 assault. There are not any references to the knee and back injuries that the petitioner had previously complained about.
 15. On or about August 22, 2001, Joseph Esposito, M.D., prescribed the petitioner Motrin in 800mg doses or Tylenol in 325mg doses. However the record is unclear as to whether the pain medication was prescribed for the knee and back pain or for other pain that the petitioner complained of that is not relevant to these proceedings.
 16. On or about August 23, 2001, the respondent completed a Connecticut Department of Correction Transfer Summary. The "Significant Medical History" section of the document identifies an injury to the petitioner's right knee, back pain as well as other medical related information that is not relevant to these proceedings. The current medication section indicates that the petitioner was taking Motrin in 800mg doses, Tylenol in 325mg doses, as well as another medication that is not pertinent to these proceedings. There is a note in the "Transfer Reception Screening" section that indicates that the petitioner "denies current pain or problem."
 17. On or about August 23, 2001, the respondent completed an Inter-Agency Patient Referral form that provides in pertinent part that the petitioner complained that no one was helping him with his medical complaints since he was assaulted.
 18. On or about August 28, 2001, the respondent completed a Connecticut Department of Correction Transfer Summary. The "Significant Medical History" section of the document identifies an injury to the petitioner's right knee as well as other medical related information that is not relevant to these proceedings. However there is a note in the "Transfer Reception Screening" section CT Page 16984 that indicates that the petitioner indicated that he was prescribed Motrin for his back, but that "no order [was] seen on P.O. sheet".
 19. On August 29, 2001, the respondent completed a Connecticut Department of Correction Transfer Summary. The "Significant Medical History" section of the document identifies an injury to the petitioner's right and left knees as well as other medical related information that is not relevant to these proceedings. There is a note in the "Transfer Reception Screening" section that indicates that the petitioner "denies having any medical needs at this time."
In order for the Court to grant the petitioner the relief requested, he must show that the respondent was "deliberately indifferent" to his medical needs. Hunnicutt v. Commissioner of Correction, 67 Conn. App. 65,69 (2001). The United States Supreme Court has established a standard for determining as to whether or not a prison official was deliberately indifferent to an inmate's medical needs:
 We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment. (citations omitted)
 Farmer v. Brennan, 511 U.S. 825, 837 (1994). CT Page 16985
As in Hunnicutt, Supra, the record in the instant action shows that the respondent did not ignore the petitioner's complaints. The evidence shows that the respondent addressed the petitioner's complaints of knee and back pain on various occasions. While the petitioner has met his burden to proof that he injured his knee on June 14, 2001 and again on or about July 3, 2001, he has not met his burden of proof to show that the respondent was deliberately indifferent to his medical needs concerning said injuries.
The record does not contain any objective factors to substantiate the petitioner's subjective feelings of pain. In fact as admitted by the petitioner on cross-examination, although he originally complained of pain in his knee and back, he did not do so after a period of time. His stated reason for this was because "more serious injuries to worry about." Additionally' the petitioner conceded during cross-examination he currently was not in pain and that he did not require assistance to ambulate to through the courthouse, into courtroom or to sit at the counsel's table.
In addition to the incidents, observations and treatments cited in the fact finding above, the respondent provided the Court with evidence of myriad incidents concerning the petitioner and medical treatments received by the petitioner (Defendant's Exhibit 1). A review of the exhibit in its entirety shows that the petitioner received treatment for the right knee injury for as long as he complained about said injury. Although the bulk of the exhibit concerns medical treatment and observations that did not directly concern the petitioner's right knee, it is relevant because it clearly indicates that the petitioner was not complaining about the knee when he was being treated for other things.
While the MRI that he seeks may be of some medically beneficial use to the petitioner, the Court has no authority to order said examination under the current circumstances. Accordingly, for the reasons stated above, the petition is denied.
Richard A. Robinson, J