Paul C. DURRELL, Plaintiff—
Appellant,

v.

David COOK, Director, Oregon Department of Corrections; Nicholas Armenakis; Robert Lampert; Brad Heath, Assistant Superintendant Snake River Correctional Institution; Joe Klika, Security Manager Snake River Correctional Institution; Rhonda Orr, Captain of Disciplinary Segregation

Snake River Correctional Institution; D. Wilson, Captain of Housing Assignment Snake River Correctional Institution, Defendants—Appellees.

No. 00–36049.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 3, 2003.

Decided Aug. 1, 2003.

Before: KLEINFELD and MCKEOWN, Circuit Judges, and SHAPIRO,* District Judge.

## MEMORANDUM **

Plaintiff Paul Durrell appeals the grant of summary judgment for defendants in his 42 U.S.C. § 1983 action for violation of his Eighth Amendment rights. We reverse.

Durrell was housed for one week, despite his protests, with an inmate he alleges is an "aggressive homosexual." Durrell claims he was subjected to "overwhelming mental and emotional stress" from being housed with the sexually aggressive cellmate. In addition, he claims that he was injured defending himself from his cellmate, and sought medical attention for his injury (though this is disputed). We have held that mental injury suffices for Eighth Amendment cruel and unusual punishment cases,[1] and physical injury for which medical care is sought does as well. If this injury is self-inflicted in the course of self-defense against a rape, it is properly treated as caused by the attempted rape.[2] A genuine issue of material fact exists as to whether the injury suffered by Durrell was caused by deliberate indifference to his safety.

Under *Farmer v. Brennan*,[3] and *Redman v. County of San Diego*,[4] an Eighth Amendment violation is established if prison officials "know[ ] of and disregard[ ] an excessive risk to inmate health or safety," and incarcerate him under conditions posing a substantial risk of serious harm, such as rape by a cellmate. Even assuming the officers in question knew only what the computer told them about Durrell's cellmate, there was sufficient information from which a jury could find "deliberate indifference." The computer records indicate that the cellmate had anally raped a sixteen year-old boy, and showed his assaults on other inmates, and a threat to rape another inmate.

"[S]ummary judgment based on qualified immunity is improper if, under the plaintiff's version of the facts, and in light of the clearly established law, a reasonable officer could not have believed his conduct was lawful."[5] As the district court acknowledged, the legal principles governing defendants' conduct were clearly established at the time Durrell was double celled with an aggressive homosexual.[6] Even in the face of clearly established law, the district court determined that, based on the evidence in the record, a reasonable prison official could have believed the double-celling arrangement was lawful.

* The Honorable Norma L. Shapiro, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. *See, e.g., Jordan v. Gardner*, 986 F.2d 1521 (9th Cir.1993) (en banc); *Keenan v. Hall*, 83 F.3d 1083 (9th Cir.1996).

2. *Cf.*, Restatement (Second) of Torts § 825 (1979) (conduct intentional if tortfeasor knows damage is "substantially certain" to result from conduct).

3. 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

4. 942 F.2d 1435 (9th Cir.1991).

5. *See Schwenk v. Hartford*, 204 F.3d 1187, 1196 (9th Cir.2000).

6. *See Redman*, 942 F.2d at 1443 (prison officials violated the Eighth Amendment by housing an aggressive homosexual with a "young and tender" heterosexual male); *Estate of Ford v. Ramirez–Palmer*, 301 F.3d 1043, 1050 n. 5 (9th Cir.2002) ("[Defendant prison officials] recognize their duty under *Redman* ....").

We have decided a genuine issue of material fact exists regarding whether the injury suffered by Durrell was caused by deliberate indifference to his safety. If it is determined subsequently that a violation did occur, no reasonable officer could have believed that defendants' conduct was lawful, so defendants are not entitled to qualified immunity. This is not to say that each of the named defendants bears responsibility for a violation, should one be found; under *Monell v. Dept. of Social Services of City of New York*,[7] there is no *respondeat superior* liability for an Eighth Amendment violation. On remand, the district court is not precluded from dismissing those defendants who had no personal involvement in housing Durrell with a sexually aggressive cellmate.

REVERSED AND REMANDED.

MCKEOWN, Circuit Judge, dissenting.

I respectfully dissent. No evidence suggests that defendants Cook, Armenakis, Lampert, and Heath were personally involved in Durrell's housing assignment and thus, the district court properly granted summary judgment in their favor. *See Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

With respect to the remaining defendants, the most logical way to analyze the case is to affirm the district court on the ground that Durrell has not established an Eighth Amendment violation. *See Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (requiring courts to determine, as a threshold matter, whether a constitutional right was violated). Alternatively, the remaining defendants are entitled to qualified immunity under *Ford v.*

*Ramirez–Palmer*, 301 F.3d 1043, 1050 (9th Cir.2002).[1] In *Ford*, we held that prison officials were entitled to qualified immunity based on their decision to house Ford with another inmate who was classified as a "predator" and who had an "extensive history of violent behavior toward inmates and staff, including eleven separate assaults, one of which involved stabbing an inmate seventeen times." *Id.* at 1051. Noting that the predatory inmate "had been successfully double-celled for years with other inmates" and had not been recommended for "single-celling" by the prison staff, we concluded that we "could not say that a reasonable officer would perceive that the risk of continuing to double-cell [the predatory inmate] would so high as to be constitutionally impermissible." *Id.* The same is true here. As in *Ford*, Durrell's cellmate had been double-celled with other inmates without incident for years before his assignment with Durrell, and prison officials did not know that he posed a danger to his cellmates. Despite the majority's assertion to the contrary, the evidence does not demonstrate that a "reasonable official" would have known, by looking at the prison's computerized database, that Durrell's housing assignment subjected him to harm. In fact, a declaration from a prison official states unequivocally that the database did not "indicate a recent history of special or outstanding problems ... that would have indicated that [Durrell] should not have been housed" with the allegedly aggressive inmate. Accordingly, the evidence does not suggest that "a reasonable officer" would have known that Durrell's housing assignment "posed an excessive or intolerable risk of serious injury" and, the remaining

---

**7.** 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

**1.** Although *Ford* did not address the first prong of *Saucier* with respect to establishing a constitutional violation, *Ford's* analysis directly contradicts the majority's approach here.

prison official are entitled to qualified immunity. *Ford,* 301 F.3d at 1052.