

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. AP-75,930 & AP-75,931

### EX PARTE HELIBERTO CHI, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS AND PETITION FOR
### A WRIT OF PROHIBITION IN CAUSE NO. 0805594
### IN THE CRIMINAL DISTRICT COURT NUMBER 3
### OF TARRANT COUNTY

COCHRAN, J., filed a concurring opinion in which WOMACK, J., joined.

### O P I N I O N

I agree that applicant is not entitled to relief on either his application for a writ of habeas corpus or his petition for a writ of prohibition because he has not made a prima facie showing of a constitutional violation. I believe that applicant's writ application could be recharacterized by this Court as an original writ under the Texas Constitution.[1] Regardless, further factual development by this applicant under this particular pleading could not result in any relief because he has not made a sufficient showing of any constitutional violation.

---

[1] *See Ex parte Alba*, No. AP-75,510, ___ S.W.3d ___ (Tex. Crim. App. June 9, 2008) (Cochran, J., concurring).

He has pled facts, and offered evidence of those pleaded facts, that bring him within the ambit of the majority decision in *Baze v. Rees*,[2] and our prior decision in *Ex parte O'Brien*.[3] Furthermore, we have received a post-*Baze* supplemental response from the Texas Department of Criminal Justice (TDCJ) that graphically demonstrates the similarities between the Texas lethal-injection protocol and that of Kentucky which was upheld by the United States Supreme Court in *Baze*.[4] TDCJ's comparison is based primarily upon data in the TDCJ Execution Procedural Manual which was attached to applicant's Petition for Writ of Prohibition.[5] Thus, the underlying data that negates applicant's claim of a constitutional

---

[2] 128 S.Ct. 1520, 1529 (2008).

[3] 190 S.W.3d 677 (Tex. Crim. App. 2006).

[4] Supplemental Brief of the Texas Department of Criminal Justice, Correctional Institutions Department, filed May 9, 2008.

[5] Texas Department of Criminal Justice Execution Procedure Manual, Rev. April 2005, pp. 8-9 (Exhibit 1 to Petition for Writ of Prohibition). Some of the data in the TDCJ chart comes from applicant's Exhibits 2 and 4, and some is implied from the TDCJ manual. TDCJ's chart shows that both Texas and Kentucky use 3 grams of sodium thiopental; Texas uses 100 milligrams (mg). of pancuronium bromide while Kentucky uses 50 mg; Texas uses 140 milliequivalents (mEq) of potassium chloride, while Kentucky uses 240 mEq. In Kentucky the person preparing the sodium thiopental is the Warden, while in Texas it is "drug injectors." In Kentucky, the medically trained personnel have up to one hour to insert the I.V. catheter lines, while in Texas there is no specific limitation on that time. In Kentucky, the IV lines are inserted, in preference order, in the arm, hands, ankles/feet, or neck; in Texas, they are inserted in the left and right arms. In both Kentucky and Texas a medical doctor is present and enters the execution chamber to examine the inmate, pronounce his death, and designate the official time of death. In Kentucky, the IV team must have a minimum of one year of professional experience as a certified medical assistant, phlebotomist, EMT, paramedic or military corpsman. In Texas, an IV team member must be a "medically trained individual" who has "certification sufficient to perform these procedures." Kentucky conducts ten annual practice sessions to ensure that the protocol will be followed, while Texas does not. But Kentucky has used its procedure only once, while Texas has executed over 400 death-row inmates. In both Kentucky and Texas, there are primary and backup IV lines. In both states, personnel observe the procedure to ensure that there

violation was supplied by applicant himself.  Furthermore, applicant, like the petitioner in

---

is no IV malfunction or tissue infiltration.  Both states also provide for a redirection of chemicals to a backup IV site if the inmate does not lose consciousness within 60 seconds.  Finally, in both states, saline is injected in the IV line between the administration of chemicals.

Furthermore, the applicant in a related case, *Ex parte Sonnier*, WR-57,256-02, filed a request for a stay of execution that we granted on June 3, 2008, that contains, as an exhibit, a copy of the most recent TDCJ Execution Procedure manual as it was amended, effective May 30, 2008.  In that protocol, TDCJ has modified a couple of its Texas procedures to mirror those of Kentucky.  Presumably these changes were made to even more closely conform to the protocol upheld by  the Supreme Court decision in *Baze*.  For example, the new protocol states, "The drug team shall have at least one medically trained individual . . . [who] shall at least be certified or licensed as a certified medical assistant, phlebotomist, emergency medical technician, paramedic, or military corpsman.  Each medically trained individual shall have one year of professional experience before participating as part of a drug team, shall retain current licensure, and shall fulfill continuing education requirements commensurate with licensure."  TDCJ Execution Procedure IV(A).  It further requires, "Each new member of the drug team shall receive training before participating in an execution without direct supervision.  The training shall consist of following the drug team through at least two executions, receiving step-by-step instruction from existing team members.  The new team member will then participate in at least two executions under the direct supervision of existing team members.  Thereafter, the new team member may participate in executions without the direct supervision of existing team members."  *Id*. at IV(B). The Huntsville Unit Warden shall annually review the training and current licensure of each team member to ensure compliance with the required qualifications and training.  *Id*. at IV(C).

The revised procedure also states, "The drug team shall prepare a back-up set of the normal saline syringes and the lethal injection drugs in case unforseen events make their use necessary."  *Id*. at VI(C).  Intravenous catheters are to be inserted in each arm; if a suitable vein cannot be found in an arm, a substitute suitable vein will be found in another part of the body. *Id*. at VII (C).  "The medically trained individual shall take as much time as is needed to properly insert the IV lines."  *Id*.  A normal saline flow is then started in the first line.  *Id*.  "The second line is started as a precaution and is used only if a potential problem is identified with the primary line."  *Id*.  The CI Division Director or designee, the Huntsville Unit Warden or designee, and the medically trained individual observe the IV to ensure that the flow is uninterrupted.  *Id*.

The new procedure also directs, "The CI Division Director or designee and the Huntsville Unit Warden or designee shall observe the appearance of the condemned individual during application of the Sodium Pentothal.  If the condemned individual exhibits no visible signs of being awake to the designated observers, the CI Division Director or designee shall instruct the drug team to proceed with the next step.  If the condemned individual does exhibit visible signs of being awake, the CI Division Director or designee shall instruct the drug team to switch to the backup IV to administer another lethal dose of the Sodium Pentothal, followed with a saline flush, before proceeding to the next step."  *Id*. at VII(J).

*Baze*, fails to articulate a readily implemented and feasible alternative to the Texas lethal-injection protocol such that the failure to implement that new, significantly superior procedure might constitute cruel and unusual punishment.[6]  Finally, applicant discusses the "botched" execution of Angel Diaz in Florida as some evidence that the same could happen to him.  But Texas is not Florida, and applicant has failed to show that any lethal-injection execution in Texas has presented the same problems as that in the Diaz case.  At any rate, "an isolated mishap alone does not give rise to an Eighth Amendment violation, precisely because such an event, while regrettable, does not suggest cruelty, or that the procedure at issue gives rise to a 'substantial risk of serious harm.'"[7]

Therefore, I agree that we must dismiss the present application for a writ of habeas corpus and the petition for writ of prohibition because neither one sets out a prima facie showing of a constitutional violation.

Filed:  June 9, 2008

Publish

---

[6] *Baze*, 128 S.Ct. at 1532 (stating that "the alternative procedure [proposed by the inmate] must be feasible, readily implemented, and in fact significantly reduce a substantial risk of severe pain.  If a State refuses to adopt such an alternative in the face of these documented advantages, without a legitimate penological justification for adhering to its current method of execution, then a State's refusal to change its method can be viewed as 'cruel and unusual' under the Eighth Amendment.").

[7] *Baze*, 128 S.Ct. at 1531 (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).