

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-11-2009

# Christopher Heffran v. John Mellinger

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-4077

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Christopher Heffran v. John Mellinger" (2009). *2009 Decisions*. Paper 1385.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1385

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-4077
_____

CHRISTOPHER HEFFRAN,
                                        Appellant

v.

JOHN MELLINGER, JACOB CARACAPPA, GERALD ARASIN;
MARK ATKINSON, MARK SOKOLSKI, MYRON STANISHEFSKI;
RICHARD WELLS; RICHARD KOSIEROWSKI; DAVID DIGUGLIELMO;
PRISON HEALTH SERVICES; CORRECTIONAL INDUSTRIES;
THOMAS STACHELEK; PETE FRANCIS; GENE MESSER;
FLOYD PASTELL; ROSEARCH INC.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 05-02229)
District Judge:  Honorable John P. Fullam
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 22, 2009

Before: MCKEE, HARDIMAN and COWEN, Circuit Judges

(Opinion filed: May 11, 2009)
_____

OPINION
_____

PER CURIAM

Appellant Christopher Heffran appeals from the order of the District Court granting the motion for summary judgment of appellees John Mellinger, Jacob Caracappa, Gerald Arasin, Mark Atkinson, Mark Sokolski, and Correctional Industries. For the reasons that follow, we will affirm.

I.

Heffran is currently, and was at all times relevant, incarcerated at SCI-Graterford in Pennsylvania. He was employed in the prison's shoe shop, where he helped manufacture shoes for inmates. In August 2003, Heffran was assigned to the rubbermill room to make the rubber for shoe soles, according to a new rubber-making process ("Process 82"). In January 2004, Heffran noticed that the rubbermill room's ventilation fan had stopped working properly and, as a result, chemical dust began to accumulate. As the dust got progressively worse, it became more irritating to Heffran's skin.

On April 24, 2004, Heffran became ill from the dust and chemicals, and he vomited in the shop. After vomiting, Heffran exited the shop and sat down, where he proceeded to vomit several more times. Mellinger, Heffran's immediate supervisor, took the label from one of the chemical containers and escorted Heffran to the infirmary. Sokolski, the infirmary nurse, inspected Heffran and told him he looked fine. Sokolski told him that there was not anything that he could do for Heffran because there was not a doctor on duty and it was not an emergency. Two days later, Heffran was examined by a physician's assistant. At that time, Heffran described his symptoms as lingering stomach

2

cramps, diarrhea, dry skin, and boils. The physician's assistant gave Heffran pepto-bismol and medication for the boils.

On April 28, 2004, Heffran returned to working with the chemicals, and, on April 30, 2004, he became sick again and started to vomit. The infirmary told Mellinger to have Heffran sign up for sick call. As it was a Friday, Heffran could not be seen by medical personnel until Monday. The physician's assistant again prescribed pepto-bismol to Heffran. Mellinger informed Heffran that he was no longer permitted to work with the chemicals.

Heffran then filed this lawsuit, alleging violations of his Eighth Amendment right to be free from cruel and unusual punishment. Relevant to this appeal, Heffran alleged that appellees Arasin, Atkinson, Caracappa, Mellinger, and Correctional Industries failed to protect him from known hazardous working conditions in the shoe factory, causing injury, and that Mellinger and Sokolski were deliberately indifferent to his resultant serious medical needs.[1] The District Court concluded that, even viewing the facts in the light most favorable to Heffran, there was insufficient evidence for a jury to conclude that the actions of any of the appellees amounted to more than simple negligence, and granted

_____

[1] The District Court previously granted Heffran's motion to voluntarily dismiss Richard Wells, P.A., Richard Kosierowski, M.D., and Prison Health Services as defendants. In that same order, the District Court granted the motion to dismiss of David DiGuglielmo, Thomas Stachelek, and Myron Stanishefski, and removed them from the action. In a later order, the District Court also granted the Research, Inc. parties' unopposed motion for summary judgment. Heffran does not appeal from either of those orders. (Appellant's Br. at 5 n.3.)

3

their motion for summary judgment.

## II.

We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291, and exercise plenary review of the District Court's order granting summary judgment. See Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007). Further, summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We may affirm the District Court on any grounds supported by the record. See Nicini v. Morra, 212 F.3d 798, 805 (3d Cir. 2000).

## III.

In order to establish an Eighth Amendment violation with respect to conditions of confinement, a prisoner must show that he has been deprived of "the minimal civilized measure of life's necessities," such as food, clothing, shelter, sanitation, medical care, or personal safety. Farmer v. Brennan, 511 U.S. 825, 832, 834 (1994) (citations omitted). The prisoner must also show that the deprivation was sufficiently serious and that the defendants acted with deliberate indifference, i.e., that prison officials knew of and disregarded a substantial risk of serious harm. See id. at 837; Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987). "[D]eliberate indifference describes a state of mind more blameworthy than negligence," but "it is satisfied by

4

something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835. In addition, "prison officials who act reasonably cannot be found liable under the [Eighth Amendment]." Id. at 845.

A.    Unsafe Working Conditions

With respect to Heffran's claim that he was subjected to unsafe working conditions in the rubbermill room, the record reveals an absence of evidence showing deliberate indifference on the part of appellees to the presumably hazardous work environment. Specifically, Heffran and other inmates working in the rubbermill room were issued and instructed to wear hooded protective jump suits, goggles, face masks, and insulated gloves. They were also trained in the use of the rubbermill and the rubber-making process by the private company that had installed Process 82.

When Heffran complained that his face mask provided insufficient protection, reasonable steps were taken to acquire an upgrade: 1) on February 27, 2004, Heffran completed the required medical questionnaire form; 2) on March 26, 2004, Heffran was examined and approved by a resident physician for a respirator (an upgrade from the face mask); 3) on April 27, 2004, Heffran and other inmates were fitted for the respirators; and 4) shortly thereafter, the inmate workers received respirators for use in the rubbermill room. Throughout, issues related to the dust build-up in the rubbermill room were discussed by Atkinson, Arasin and Caracappa, all of whom were active in trying to ameliorate the problem with the ventilation system. Furthermore, it is uncontested that

5

prison mechanical and electrical staff attempted to repair the rubbermill room ventilation system on more than one occasion, and that on May 4, 2004, new filter hoses and dust collection bags arrived for the system.

True, many of the remedial actions described did not bear fruit until after Heffran had been transferred from the rubbermill room. But while the speed at which appellees took corrective measures was, according to Heffran, less than desirable, it cannot be characterized as "disregard" for the situation. As the District Court found, the record at best demonstrates negligence, which is insufficient for Eighth Amendment purposes. Id. at 835. Therefore, it was proper for the District Court to enter summary judgment against Heffran on his Eighth Amendment unsafe working conditions claim.

B.    Medical Neglect

In addition, Heffran's medical neglect claim does not survive summary judgment because he has not presented evidence of deliberate indifference on the part of either Mellinger or Sokolski. As in Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004), our analysis differs with respect to medical (Sokolski) and non-medical (Mellinger) prison officials. We will first discuss the medical neglect claim as advanced against Sokolski.

As a preliminary matter, "prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993). After his first bout of vomiting, Heffran was seen by nurse Sokolski in the prison infirmary. Sokolski observed Heffran's physical and mental status, and tested his blood's

6

oxygen saturation levels using a pulse-oximeter. According to Sokolski, Heffran's condition appeared quite stable; the vomiting had subsided prior to Heffran's being brought to the infirmary, and he had no difficulty breathing, confusion, discoloration or anything else that would indicate a condition requiring immediate medical attention. Given these facts, Sokolski's decision to forgo emergency care and have Heffran wait two days to see a doctor was reasonable. See Farmer, 511 U.S. at 845.

With respect to Mellinger, the evidence shows that after Heffran first got sick, Mellinger brought him to the prison infirmary. After that, Heffran was in Sokolski's hands, and, as just explained, Sokolski's treatment of Heffran was reasonable. Similarly, after the second episode of vomiting, on April 30, 2004, Mellinger called the prison infirmary, and had Heffran sign up to see a doctor. Mellinger also made sure that when Heffran returned to work, he was not assigned to the rubbermill room. That said, there is nothing in the record to suggest that Mellinger knew or had reason to believe that Sokolski's, or any other medical staff member's, treatment of Heffran was improper or even sub-par. See Spruill, 372 F.3d at 236 ("absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference").

Therefore, because Heffran has not presented evidence of deliberate indifference with respect to his medical needs, it was proper for the District Court to enter summary

judgment against Heffran on his Eighth Amendment medical neglect claim.

## IV.

There being no genuine issue of material fact, and because appellees are entitled to judgment as a matter of law, we will affirm the District Court's order granting summary judgment.