**ALD-286**                                                    **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4651
_____

BEN ROTEN,

Appellant

v.

DR. LAWRENCE MCDONALD

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil No. 08-00081)
District Judge:  Honorable Joseph J. Farnan

_____

Submitted for Possible Dismissal Under 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Under Third Circuit LAR 27.4 and I.O.P. 10.6
September 10, 2010

Before:  SLOVITER, AMBRO and SMITH, <u>Circuit Judges</u>

(Opinion filed: September 21, 2010)
_____

OPINION
_____

PER CURIAM

In this civil rights action commenced under 42 U.S.C. § 1983, Ben Roten, a Delaware

state inmate formerly confined at the Sussex Correctional Institution (SCI),

1

claimed that he was sexually abused by an SCI medical professional - Dr. Lawrence McDonald - during a required physical examination. The District Court granted McDonald's motion for summary judgment. Roten filed this appeal. Because the material facts in this case are not in dispute, and because a reasonable jury could not find Roten's complaint to have stated a viable Eighth Amendment claim against McDonald, we find no error in the District Court's decision. Furthermore, because this appeal presents no substantial question, we will summarily affirm the judgment of the District Court.

## I.

In his original complaint[1], Roten alleged that SCI directed him to undergo a complete physical examination on October 25, 2006. The physical examination was conducted solely by McDonald. Believing that he was "sexually molested" during the examination (Dist. Ct. dkt #2, at 5), Roten sought relief through the inmate grievance process. He was ultimately unsuccessful. On November 10, 2006, McDonald met with Roten to, in Roten's words, "try to explain why he touched me the way he did." Id. Roten later wrote: "I told him that I was uncomfortable talking to him and I left." (Dist. Ct. dkt #32, at 8.)

On February 1, 2008, Roten filed this civil rights complaint, naming as defendants McDonald, Department of Corrections Commissioner Carl Danberg (Commissioner

---

[1] Roten was granted leave to file an amended complaint in order to change the complaint's caption and to add a monetary value to his punitive damages request. Roten did not, however, alter or expound upon the factual allegations in the original complaint.

2

Danberg), and additional SCI employees and contractors. The District Court granted Roten

leave to proceed in forma pauperis and, after screening his complaint pursuant to 28 U.S.C.

§§ 1915(e)(2)(B) and 1915A(b)(1), it dismissed from the case all named defendants save

McDonald. Discovery ensued.

In an excerpt from Roten's journal, produced in response to McDonald's request for

documents, Roten wrote that McDonald did not wear gloves during the October 25, 2006

exam, and further described their interaction as follows:

> Dr. McDonald then proceeded with the examination by having me remove my
> jumpsuit down to the [waist] and to remove my tee-shirt. He listened to me
> breathe, then he ask[ed] me to remove my jumpsuit and boxers and to lay
> back[.] He the[n] examined my pubic area and ask[ed] me if I had a hernia
> surgery, and I told him [']yeah, I had surgery[,'] that I thought he knew that.
> He acted like he didn't know about it. He then ask[ed] me to lift my left leg
> up and to hold them apart[.] He then took my penis in one hand and pulled it
> to the right, while he cuffed my testicles in his other hand and rolled them
> around in a massaging motion.

(Dist. Ct. dkt #32, at 6.)

McDonald repeated that series of manipulations with Roten's right leg raised, after

which McDonald told Roten to get dressed.[2] The examination appeared to be finished until

Roten told McDonald that he was suffering from frequent urination. According to Roten,

McDonald told him to remove his clothes again, then:

> he rolled over in his chair and took my penis in his first two fingers and
> thumbs of each hand then he squeezed down my penis in a milking motion

---

[2] At his deposition, Roten testified that each series of manipulations lasted between
fifteen and twenty seconds.

3

until he got to the tip [and] then he pulled the tip open with his thumbs and look[ed] in the pee hole[.] Then he told me everything was [okay and] to get dressed.

Id. at 7.

In a document responsive to Roten's interrogatories, McDonald explained the medical justification for his conduct during Roten's physical exam:

Holding each leg up and then pushing down on each leg is used to evaluate strength of legs and back. The genital exam includes palpating the testicles looking for masses, tenderness and presence and size of both testicles. The penis is positioned out of the way for the testicular exam. These are all common elements of a complete physical exam.

* * *

The palpation of the shaft of the penis is to look for points of pain or masses and to express any discharge. This is not part of a routine genital exam but was performed after [Roten] had completed his exam and had redressed. He then informed [me] of his frequent urination problems and so [I] asked him to lower his pants and boxers to permit the above exam. [My] concern was for the presence of a venereal disease or infection and whether [Roten] needed a urethral probe. [I] did not feel this was needed. [I] did order a urine culture.

(Dist. Ct. dkt #47, at 7-8.)

To get a second opinion, Roten sent out letters to different medical professionals asking what steps they would take in diagnosing and treating a patient complaining of frequent urination. Roten's letters did not describe the examination performed by McDonald. Roten received a response from Dr. Mark T. Edney, who wrote that "[u]rinary frequency has many potential causes," (Dist. Ct. dkt #57, at 7), including fluid intake or an enlarged prostate. If the latter, Dr. Edney wrote, "[s]ometimes we will start a medicine like Flomax

4

to try to reduce frequency by unblocking the prostate," id., but beyond that it would depend on the patient's individual situation. In a separate letter, Dr. Robert L. Klaus wrote that Roten's questions "could only be answered by an office visit where we could have you void in a special machine to determine how your flow is and also measure you for residual urine with ultrasound." Id. at 9. In addition to those letters, Dr. James E. Moulsdale, a board-certified urologist, reviewed Roten's complaint and the evidence presented in his case by both parties. Accepting as true Roten's description of the October 25, 2006 physical exam, Dr. Moulsdale opined that there was nothing improper about McDonald's conduct.

During his deposition, Roten testified that he was molested as a child, and that the examination by McDonald caused bad memories to resurface. Roten eventually came under the care of Elena Padrell, a part-time psychiatrist at SCI who was directly employed by Correctional Medical Service (CMS). Roten attended therapy sessions with Padrell almost every week. Padrell eventually resigned her position at SCI, stating in a letter to Commissioner Danberg that she "had to resign or risk compromising my professional ethics." (Dist. Ct. dkt #61, at 2.) In that letter, Padrell outlined six reasons that supported her decision, the sixth reading as follows:

> Finally, during my treatment sessions with patients I was told by several of them about a very serious matter concerning the possible sexual abuse of inmates by a medical colleague. When I brought this to the attention of CMS officials I was told . . . that I should be a 'team player' and let those allegations pass. Doing so would be a serious violation of my professional ethics, however. Thus, when I realized that nothing was going to be done to even look into those allegations, I felt I had to resign and seek the opportunity to discuss these issues with you.

5

Id. at 3.

Padrell's letter did not mention by name Roten or McDonald. Commissioner Danberg responded to Padrell's letter in kind, stating that the allegation "of staff sexual misconduct reported to you by inmates . . . has been investigated by Internal Affairs and reviewed by the Medical Society of Delaware and determined to be unfounded." Id. at 4. By contrast, Roten received a letter from the Delaware Board of Medical Practice advising Roten that his claim of sexual misconduct was "criminal in nature and therefore outside the jurisdiction of this agency to investigate." (DC dkt #57, at 11.)

In one of Roten's journal entries, he wrote that he underwent a subsequent physical examination on April 20, 2007. This exam was administered by "a new [d]octor, . . . and at no time did he ever ask me to get undressed past my [waist], [and] at no time did he ever feel my penis or [testicles], the way Dr. McDonald did." (Dist. Ct. dkt #32, at 13.)

On June 22, 2009, McDonald moved for summary judgment. Roten filed a response to the motion, and McDonald filed a reply. On November 30, 2009, the District Court granted McDonald's motion and entered judgment in his favor the following day. Roten timely appealed.

## II.

The District Court exercised jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291, and our review is plenary. See Howley v. Mellon Financial Corp., --- F.3d ---, 2010 WL 3397456, at *3 (3d Cir. Aug. 31, 2010, No. 08-1748).

6

"Summary judgment is appropriate if, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id. (citations omitted). We may affirm the District Court's grant of summary judgment on any grounds that find support in the record. Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010). Furthermore, if Roten's appeal fails to present a substantial question, we may summarily affirm the judgment below. See LAR 27.4; I.O.P. 10.6.

III.

"Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). The District Court reasonably construed Roten's claim of sexual abuse as one arising under the Eighth Amendment, which proscribes the "unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (citation omitted). The Eighth Amendment also secures an inmate's "right not to be sexually abused by a state employee while in confinement." Beers-Capitol v. Whetzel, 256 F.3d 120, 142 n.15 (3d Cir. 2001). A touchstone of Eighth Amendment jurisprudence in this context is that its violation will not be found unless a prison official acts with a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994).

It is worth reinforcing that "[o]ur role in reviewing a grant of summary judgment is not to weigh the evidence or to determine the truth of the matter, but only to determine

whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." Reedy v. Evanson, --- F.3d ---, 2010 WL 2991378, at *8 (3d Cir. Aug. 2, 2010, No. 09-2210) (citation and internal quotations omitted). Importantly, the material facts of this case are not in dispute; the only divergence lies between the parties' perceptions concerning the legality of McDonald's conduct. Having reviewed the entire record in this case, we conclude that, even viewing that record in the light most favorable to Roten, a reasonable jury could not return a verdict in his favor on his Eighth Amendment claim against McDonald.

We arrive at this conclusion despite drawing the inference that McDonald was the "medical colleague" referenced in Padrell's letter to Commissioner Danberg. That inference is not enough for Roten's suit to survive summary judgment. Roten failed to present evidence even suggesting that McDonald's conduct during the October 25, 2006 physical exam deviated in any way from standard procedure.[3] Neither Dr. Edney nor Dr. Klaus was asked to comment on the appropriateness of McDonald's conduct, and both indicated that they would need to examine Roten in person to address his specific medical concerns. Dr. Moulsdale did, however, review the specific evidence presented in this case, and he believed there to be no impropriety during Roten's physical exam. Moreover, having inferred that

---

[3] That is the case regardless of Roten's indication that a subsequent physical examination at SCI was conducted differently and, inferring favorably for Roten, less intrusively. Notably, it does not appear as though Roten complained of the same symptoms during that examination.

8

Padrell's letter to Commissioner Danberg included a veiled reference to McDonald, we note that the SCI inmates' allegations of sexual misconduct were investigated by DOC Internal Affairs, reviewed by the Medical Society of Delaware, and determined to be "unfounded." Roten offered no evidence to undermine the integrity of those investigations.

To support an Eighth Amendment claim, it is not enough for an inmate to object to the manner in which a medical professional administers treatment or conducts an examination. See Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987). Judges are not "versed in the nuances of the practices and techniques of the medical profession and thus are ill-equipped to substitute their views regarding what is medically adequate, proper, or antiseptic." Ragsdale v. Turnock, 841 F.2d 1358, 1389 (7th Cir. 1988) (Coffey, J., dissenting). Therefore, for the reasons given in this opinion, we are confident that no reasonable jury could deem the allegations in Roten's complaint sufficient to demonstrate an Eighth Amendment violation.[4]

Accordingly, because this appeal presents no substantial question, we will summarily affirm the District Court's judgment. Roten's motion for appointment of counsel is denied.

---

[4] After determining that summary judgment was appropriate as to Roten's federal claim, the District Court declined to exercise supplemental jurisdiction to the extent Roten raised a state law claim for assault and/or battery. See 28 U.S.C. § 1367(c). This was not an abuse of discretion. See Carlsbad Tech., Inc. v. HIF Bio, Inc., 129 S. Ct. 1862, 1867 (2009) (noting standard of review).