RONALD LEE GILMAN, Circuit Judge,
dissenting.
I agree with much of, even most of, the majority’s analysis. This includes its conclusions that the only applicable exception to DeShaney’s general no-liability rule is the state-created-danger prong, that simply demonstrating that the police negligently assessed the competing risks is not enough to create liability, that the actions taken by the police do not indicate a “callous indifference” to Rocky’s rights, and that we should not take into account the legal conclusions of Cutlip’s expert witness that go to the ultimate issue of liability.
But even with all that being said, I believe that the grant of summary judgment was inappropriate in this case. I say that because a key fact in dispute — as acknowledged by the majority — is “whether Rocky intentionally committed suicide or whether he involuntarily pulled the trigger after the police detonated the flash-bang device.” (Maj. Op. at 117) Because all material facts must be construed in favor of the nonmoving party when evaluating a motion for summary judgment, the majority properly noted that “we will accept Cutlip’s version of this factual dispute.” Id.
This key factual point then meshes with the legal standard applicable to this case as set forth in Ewolski v. City of Brunswick, 287 F.3d 492 (6th Cir.2002); i.e., did the police act with “subjective recklessness” by “ ‘knowingly and unreasonably opt[ing] for a course of conduct that entailed a substantially greater total risk than the available alternatives.” Id. at 513, 515 (quoting Farmer v. Brennan, 511 *122 U.S. 825, 846, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). According to Hugh M. McGowan, a former commanding officer of the New York City Police Department’s Hostage Negotiation Team and Cutlip’s expert witness, they did.
McGowan supports his opinion with the following points that find arguable support in the record:
• There were no hostages and Rocky posed no risk to others;
• After Officer Gillen requested the immediate SWAT response, at least 47 minutes elapsed during which Rocky made no attempt to harm himself; and
• The use of the “flash-bang” device was a “gross violation of generally accepted police practice” and “particularly inappropriate under circumstances involving a suspect with his finger on a trigger and a shotgun under his chin as it is known to have a startle effect, causing involuntary movements.”
Since we must assume for the purposes of summary judgment that Rocky indeed died because “he involuntarily pulled the trigger after the police detonated the flash-bang device,” McGowan’s testimony raises a genuine dispute of material fact as to whether the police acted recklessly by “ ‘knowingly and unreasonably5 optfing] for a course of conduct that entailed a substantively greater total risk than the available alternatives.” Ewolski, 287 F.3d at 515 (quoting Farmer, 511 U.S. at 846, 114 S.Ct. 1970).
This is not to say that a jury will so find. But the evidence presented by Cutlip is sufficient to raise a genuine dispute as to whether the state-created-danger exception to DeShaney is applicable here. The proof, in other words, is not “so one-sided that [the City of Toledo] must prevail as a matter of law.” See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). I therefore respectfully dissent.