FILED
United States Court of Appeals
Tenth Circuit

February 6, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

LARRY C. MILLER,

      Plaintiff - Appellant,

v.

CAPTAIN KASTELIC, Shift
Commander CCCF; INMATE DANIEL
REIMER #98949, CCCF/Denver Parole;
LT. RIDGWELL, CCCF-5 Hearings
Officer,

      Defendants - Appellees.

No. 14-1226
(D.C. No. 1:12-CV-02677-CMA-MEH)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **McKAY**, and **McHUGH**, Circuit Judges.

Larry C. Miller, proceeding pro se, filed a complaint pursuant to 42 U.S.C.

§ 1983 alleging that defendant Dennis Kastelic violated his constitutional rights by

failing to protect him from harm when Mr. Miller was incarcerated at the Crowley

County Correctional Facility (CCCF). The district court granted summary judgment

---

[*]      After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

in favor of Captain Kastelic, and Mr. Miller now appeals from the district court's decision.[1] Exercising jurisdiction under 28 U.S.C. § 1291, we reverse.

## I. Factual Background

Mr. Miller is a convicted sex offender. He was transferred from another prison facility and arrived at CCCF on July 16, 2012. Daniel Reimer, an alleged member of the 211 gang, was assigned as his cellmate. In his verified complaint, Mr. Miller alleged:

> Immediately when I walked in I was confronted by a small group of 5 white gang members, asking for my paperwork, to prove I wasn't a sex offender (which I am). When I refused I was threatened with my canteen being taken for "rent." I said what my crime of record was and that I wasn't going to pay anything and that I'd try to move.

R. at 23.[2] Mr. Miller spoke with a corrections officer about the situation, and that officer made several trips to Mr. Miller's cell to check on him. Mr. Miller was also able to meet with the Chaplain to talk about moving to a different unit, but he was informed that it would take a few days.

---

[1] Mr. Miller also brought claims against Daniel Reimer and Elijah Ridgwell. The district court granted summary judgment in favor of Mr. Ridgwell on Mr. Miller's due-process claim, but Mr. Miller has not appealed from that portion of the district court's decision. The district court declined to exercise supplemental jurisdiction over Mr. Miller's state-law claims against Mr. Reimer and those claims are not before us.

[2] In the summary judgment context, a pro se litigant's verified complaint may be treated as an affidavit as long as it satisfies the standards for affidavits outlined in Rule 56. *Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988) (per curiam). The district court treated Mr. Miller's verified complaint as an affidavit for the purposes of summary judgment.

When he returned to his cell after meeting with the Chaplain, he discovered that his canteen items had been stolen. He testified in his deposition that "I was being ridiculed and mocked by Reimer, about where my canteen went. He told me I had to move or something more severe was going to happen to me." *Id*. at 472. Mr. Miller then asked to speak to Captain Kastelic, who was the shift commander.

In his complaint, Mr. Miller alleged that he told Captain Kastelic that he was being threatened and intimidated by Mr. Reimer and his friends "due to [his] crime of record being a sexual offense." *Id*. at 19. He asserted that Captain Kastelic refused to act, and told him: "'There are no protected units at this facility and if you refuse your (assigned) room, I will put you in seg (segregation) and file charges on you.'" *Id*. at 31.

In his affidavit that he submitted in response to summary judgment, Mr. Miller stated that Mr. Reimer was a known member of the 211, a security threat group, and that the 211's "actions against inmates with certain types of offenses are well documented." Supp. R. at 16. Mr. Miller further stated that he told Captain Kastelic that "he was in danger by being placed in the cell they had [placed] him in as Inmate Reimer was a 211 member and [Mr. Miller] had a sexually based offense." *Id*. And he "informed Capt. Kastelic that he would be assaulted and possibly killed if returned to that cell." *Id*. He testified that Captain Kastelic told him to "'Man up,'" and then

returned him to his cell.  *Id*.  Mr. Reimer assaulted Mr. Miller in their cell after dinner.[3]  Mr. Miller suffered injuries to his face, eyes, and back.

## II.  Discussion

"We review orders granting summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party."  *Howard v. Waide*, 534 F.3d 1227, 1235 (10th Cir. 2008).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a)).

"[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners."  *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotation marks and ellipsis omitted).  "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety."  *Id*. at 834.  In order to establish an Eighth Amendment claim for failure to protect, a plaintiff "must show that he [was] incarcerated under conditions posing a substantial risk of serious harm[,] the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component."  *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003) (internal quotation marks omitted).  For the subjective component,

---

[3]     Mr. Miller was initially charged with fighting because prison authorities discovered that he had used a sock weighted with a metal lock as a weapon during the altercation and Mr. Reimer also suffered injuries.  But Mr. Miller's disciplinary charges for fighting were ultimately overturned by the warden because the warden determined that Mr. Miller was acting in self-defense.

"a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (internal quotation marks omitted).

The district court first determined that Mr. Miller failed to provide sufficient evidence to demonstrate that he faced an objective "substantial risk of serious harm." We disagree.

The district court noted that Mr. Miller alleged in his complaint that "he received threats of physical assault from multiple inmates," R. at 493, but then concluded that "[t]he mere fear of physical assaults by inmates who may discover that [Mr. Miller] was charged with a sex offense is insufficient to constitute a substantial risk of serious harm," *id.* at 494 (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1205 (10th Cir. 1996)). The district court's conclusion and citation to *Riddle* is not appropriate given the facts Mr. Miller introduced in his verified complaint, deposition testimony, and affidavit.

In *Riddle*, the plaintiffs alleged that the defendant prison officials had failed to protect them because they lived in constant fear of being discovered as sex offenders and the possible physical assaults that could result from such a discovery. *See* 83 F.3d at 1205. This court affirmed the dismissal of plaintiffs' complaint, noting that "[a] [p]laintiff's allegations must furnish more than a conclusory claim of being afraid and aggravated." *Id.*

- 5 -

In contrast, Mr. Miller alleged that the inmates at CCCF had already discovered that he was a sex offender and were using that knowledge to attempt to extort his canteen items. Mr. Miller notified Captain Kastelic that he was being threatened by his cellmate, Mr. Reimer, an alleged member of the 211 gang. He also indicated in his affidavit that 211 members were known for "their actions against inmates with certain types of offenses." Supp. R. at 16. Drawing the inferences in Mr. Miller's favor, he gave notice to a prison official that an alleged member of a group prone to assaulting sex offenders had threatened him due to his status as a sex offender. Mr. Miller's factual circumstances are therefore distinguishable from the circumstances in *Riddle* where the plaintiffs were alleging a general and speculative fear of harm due to the possible discovery of their status as sex offenders.

Captain Kastelic did not submit an affidavit in support of summary judgment. The only other evidence regarding the potential risk of harm to Mr. Miller is an affidavit from another corrections officer, Michael Dietrich, in which he testified that "[t]o the best of [his] knowledge, Defendant Daniel Reimer did not have a violent history prior to the attack." R. at 333. At most, however, Mr. Dietrich's testimony creates a dispute of fact; it does not establish that there was no objective risk of harm. Drawing the inferences in Mr. Miller's favor, he has provided sufficient evidence to demonstrate a triable issue of fact as to whether he was facing a substantial risk of serious harm when Captain Kastelic returned him to his cell after Mr. Miller notified

- 6 -

Captain Kastelic that he was being threatened by Mr. Reimer, a member of the 211 gang.[4]

The district court further concluded that Mr. Miller had failed to demonstrate a genuine issue of material fact as to the subjective component. Again, we disagree. The district court stated that "even if true that Kastelic knew about Plaintiff's *concerns* about his cell mate, Kastelic cannot be said to have 'disregard[ed] a known or obvious risk that is very likely to result in' *threats to or physical assaults* upon the Plaintiff." *Id.* at 495 (emphasis added).

In reaching this conclusion, it does not appear that the district court was drawing all of the factual inferences in Mr. Miller's favor. Mr. Miller did not just express general or speculative "concerns" about his cellmate. He informed Captain Kastelic that he was "being threatened and intimidated by inmate Daniel Reimer," *id.* at 31, "that he was in danger by being placed in the cell . . . as Inmate Reimer was a 211 member and [Mr. Miller] had a sexually based offense," Supp. R. at 16, and "that he would be assaulted and possibly killed if returned to that

---

[4]    In finding that there was no objective risk of serious harm, the district court also noted that Mr. Miller "was given the option to move to segregation." R. at 494. There is no testimony from Captain Kastelic about what he told Mr. Miller when Mr. Miller informed him of Mr. Reimer's threats. In his verified complaint, however, Mr. Miller alleged that Captain Kastelic told him to "'suck it up, there are no protection units here for you . . . if you refuse to accept your cell I will put you in segregation and bring charges against you.'" *Id.* at 19. We disagree with the district court's characterization of this record evidence. Threatening an inmate with being put into segregation and having disciplinary charges brought against him is not the same thing as giving an inmate the option of voluntarily going to segregation for his own protection.

- 7 -

cell," *id*. Mr. Miller also testified in his affidavit that Captain Kastelic responded to his report of these threats by telling him to "'Man up.'" *Id*. at 16. The foregoing testimony, considered in the light most favorable to Mr. Miller, could reasonably support the inference that Captain Kastelic knew Mr. Miller faced a substantial threat of serious harm but thought Mr. Miller should deal with the situation himself instead of seeking protection from prison authorities.

Mr. Miller has presented sufficient evidence to create a genuine dispute of material fact as to whether Captain Kastelic violated his Eighth Amendment rights by failing to protect him from being assaulted by Mr. Reimer. Accordingly, we reverse the judgment of the district court and remand for further proceedings consistent with this decision.

Entered for the Court


Carolyn B. McHugh
Circuit Judge