*Karov v. Correct Care Solutions, Inc.*, No. 532-9-13 Wncv (Teachout, J., August 3, 2015)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

# STATE OF VERMONT

**SUPERIOR COURT**                                                        **CIVIL DIVISION**
**Washington Unit**                                                        **Docket No. 532-9-13 Wncv**

**THOMAS KAROV**
       **Plaintiff**

       **v.**

**CORRECT CARE SOLUTIONS, INC., et al.**
       **Defendants**

## DECISION
### Defendants' Motion for Summary Judgment

Plaintiff Thomas Karov had hernia-related abdominal surgery while incarcerated at the Northern State Correctional Facility in Newport. He alleges that the medical staff at the Facility did not provide him with his pain medication in a timely manner during the first three days following surgery. He also claims that over the course of his imprisonment (in Newport and elsewhere) he at times did not get prompt refills of other unrelated prescriptions. In this case, he claims that these circumstances rise to the level of medical malpractice and cruel and unusual punishment under the Eighth Amendment. Defendants include Correct Care Solutions, Inc., the contractor responsible for medical care at the Facility at the time, and two of its employees: Dr. Garry Weischedel and Nurse Samantha Lapage.[1]

Defendants have filed a motion for summary judgment. They argue that the medical malpractice claim requires the support of expert testimony and Mr. Karov has failed to come forward with any. They also argue that Mr. Karov's evidence of deliberate indifference is insufficient to establish a triable issue on the Eighth Amendment claim.

*Facts regarding pain relief following surgery*

The facts, as alleged by Mr. Karov, are materially inconsistent with parts of the progress notes kept by his medical providers and are supported principally by his testimony alone. For purposes of summary judgment, the court assumes that a jury could find the facts as represented by Mr. Karov.

Mr. Karov's surgery (which went well) occurred on the morning of May 5, 2010 at a hospital that is not part of the prison. Following surgery, he was given a dose of Oxycodone, a narcotic, for pain while still at the hospital. He was discharged back to the prison with the instruction that he could have the next dose in four hours (approximately 2:30 p.m.) as needed.

According to his allegations, at 2:30 p.m., in the prison infirmary, he began to complain

---

[1] Mr. Karov also named another nurse, Colleen Jelicka, as a defendant. Mr. Karov never filed any proof of service on Ms. Jelicka and Ms. Jelicka has never made an appearance in this case.

that he needed his next dose of pain medication. The nursing staff indicated that they needed to await a prescription from the Facility doctor and that any instructions regarding pain medication from the hospital surgeon were not "valid." The nurses made clear that they were in touch with the doctor about the need for pain medication. Eventually, the Facility doctor wrote a prescription for Tramadol, a non-narcotic pain reliever. Mr. Karov received the first dose of it at 7:44 p.m. Thereafter, he received regular doses through May 6.

At the morning "med pass" on May 7 there was confusion about his prescription. One nurse was ready to dispense the Tramadol. Another believed that the prescription did not permit it. Mr. Karov did not get that dose of Tramadol at that time and filed an emergency grievance. The findings in the grievance denial explain as follows:

> The patient was ordered Tramadol 50mg 1 or 2 tablets to be given every 4 hours as needed not to exceed 400 mg/day. *The order was written incorrectly in the MAR [medication administration record] and the patient did not receive his 0600 dose.* The nursing staff spoke with the physician received [sic] an order for Ibuprofen for 1100. When patient arrived for the 1100 med pass at approximately 1145 he was told about the ibuprofen but also told that he could return in 30 minutes for his Tramadol. Pt refused the Ibuprofen and stated he would be contacting his attorney. The patient did not return for his medication as requested/suggested by the nursing staff at 1215. The patient did receive the 1600 and 2000 doses.

VT DOC Grievance Form #3 (dated May 12, 2010) (emphasis added). Mr. Karov alleges that he did not return for the Tramadol at 12:15 p.m. because he was under the impression that he needed to be called specially by medical staff and he never received that call. He did not get his first dose on May 7 until 4:00 p.m. Thereafter, he received his doses as needed and prescribed.

*Facts regarding refills of longer term medications*

Mr. Karov generally alleges that, throughout his incarceration, regardless where he was housed, there were times when he experienced problems getting refills on his medications taken for conditions unrelated to the abdominal surgery. It appears that Mr. Karov took several of these medications as needed rather than on a predictable schedule. At the time, he was unaware that prescriptions at the facility could not be written for longer than 90 days and would be discontinued if unused for a certain amount of time. His confusion over these matters appears to have contributed to those occasions in which Mr. Karov should have had a medication available but did not.

The culmination of one of his relevant grievances was a letter from the Health Services Director:

> My office received your Appeal petition outlining your dissatisfaction with the medical service process of reordering medications. From your state, it appears that your medication ran out and was not available. You also state that it was discontinued.

2

My office has spoken with medical services about the need to reorder medication in a timely fashion and that self-carry inhalers must be available when an individual needs a replacement. I have copies [sic] this letter to key medical services managers so that [sic] can put into place procedures to prevent this problem from reoccurring.

Letter from Delores Burroughs–Biron to Thomas Karov (dated April 9, 2010).

*Medical malpractice*

The Court has described the elements of a medical malpractice claim and the need for supporting expert testimony as follows:

> The burden is on the plaintiff in a medical malpractice action to prove both that the defendant physician was negligent and that the plaintiff's injuries were proximately caused by that negligent conduct. Normally this burden is only satisfied when the plaintiff produces expert medical testimony setting forth: (1) the proper standard of medical skill and care; (2) that the defendant's conduct departed from that standard; and (3) that this conduct was the proximate cause of the harm complained of. An exception to this general rule exists in cases where the violation of the standard of medical care is "so apparent to be comprehensible to the lay trier of fact."

*Senesac v. Associates in Obstetrics and Gynecology*, 141 Vt. 310, 313 (1982) (citations omitted); see also 12 V.S.A. § 1908. Mr. Karov has come forward with no such expert testimony in this case and did not file a 12 V.S.A. § 1042 certification of merit.[2] Defendants argue that expert support is necessary.

*Post-surgery pain relief*

Mr. Karov's position is understandable. In his view, it is obvious that a patient who undergoes abdominal surgery such as he did is going to experience pain and need pain medication. It is all the more obviously so when that patient complains that he is in pain and still does not get pain medication. His malpractice claim is that it was obvious that he needed medication and it took too long to get it. No expert is necessary, he argues, for a jury to understand that.

The problem with Mr. Karov's argument, however, is that it is asserted but not proved. There is no dispute that Mr. Karov was in pain and reasonably needed pain medication. Those facts, however, do not prove that because there was a delay in the administration of medication,

---

[2] Generally, by statute, plaintiffs are not supposed to file medical malpractice claims until consulting with an applicable expert who has explained the standard of care and warranted that there is a good faith basis for the claim and certifying the same to the court. 12 V.S.A. § 1042. The statute obviously advances a strong legislative policy against the filing of medical malpractice claims by plaintiffs, whether represented by an attorney or not, without the imprimatur of a medical expert's expertise. This did not happen in this case.

3

the medical providers negligently breached the applicable standard of care.

Expert testimony is necessary to establish the standard of care in this case, as in most cases. The standard of care articulates "the degree of care ordinarily exercised by a reasonably skillful, careful, and prudent health care professional engaged in a similar practice under the same or similar circumstances whether or not within the state of Vermont." 12 V.S.A. § 1908(1). Thus, as to May 5, the case could not go to a jury without expert medical testimony as to the duty of the Facility doctor between 2:30 pm and 7:44 pm and breach of that duty, given all the circumstances, including transfer of the care of the patient from the hospital to the Facility. As to May 7, the case could not go to a jury without expert medical testimony as to the duty of the Facility medical providers between 11:45 am and 4:00 pm and breach of that duty, given all the circumstances, including Mr. Karov's failure to return for medication at 12:15 pm.

The record is silent as to why it took as long as it did for Mr. Karov to receive his first dose of pain medicine in the Facility on May 5. All that is known is that the nurses were in contact with the doctor about the need for the prescription and it took as long as it did to receive it. The delay on May 7 was caused by some kind of error in the medication administration record and some kind of confusion about whether Mr. Karov could return to the infirmary for his medication when he was told to. These may or may not be sufficient facts upon which an expert could predicate a standard of care and a breach, but they certainly are not sufficient for a layperson jury to do so. Juries do not know what standards apply in an institutional setting of this sort and the record is silent on the background circumstances that might help to show negligence or an absence of it. Defendants are entitled to summary judgment on these claims.

### Refills of longer term medications

Mr. Karov's claim regarding delays in getting refills of his prescriptions has the same defects. It is insufficient to simply assert the bad outcome (delays in getting refills) and then insist that the outcome must be the result of negligence. The record discloses little about this claim other than that Mr. Karov was confused about the rules regarding refills and he repeatedly experienced delays in getting refills on prescriptions that had run out. There is no expert support for this claim and the record cannot not support any inference of negligence without it.

### The Eighth Amendment

The U.S. Supreme Court has recognized that deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). Not every claim of inadequate medical care is a constitutional violation, however. As the Court described,

> [I]n the medical context, an inadvertent failure to provide adequate medical care
> cannot be said to constitute "an unnecessary and wanton infliction of pain" or to
> be "repugnant to the conscience of mankind." Thus, a complaint that a physician
> has been negligent in diagnosing or treating a medical condition does not state a
> valid claim of medical mistreatment under the Eighth Amendment. Medical
> malpractice does not become a constitutional violation merely because the victim

4

is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Id*. at 105–06. Deliberate indifference means "that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id*. at 838.

The evidence in this case is insufficient to show a negligent state of mind, much less deliberate indifference. While there were delays in getting pain medication to Mr. Karov, there is no dispute that the nurses conveyed the need for medication to the doctor, the doctor wrote the prescription, and the medication was given. It just took longer than desirable for reasons that go completely unexplained in the record. The delay itself is insufficient to support any inference of disregard.

Counsel for Mr. Karov argues as follows:

When a patient is returned to a prison infirmary after undergoing serious abdominal surgery, such as to repair an inguinal hernia, is not seen by the doctor at all that day, and has his prescription changed from one given for serious pain to a non-narcotic without explanation specific to the individual, and is given no medication for more than five hours after the surgeon's prescribed time for the next dose, despite his repeated requests and claims of pain; those are facts that a lay trier of fact can readily determine constitute medical neglect. When the provider's notes for a good portion of the day in question are withheld or otherwise not available, and false entries made when the staff becomes aware that the patient has contacted his attorney, at that point a lay trier of fact can readily determine that the neglect is willful and constitutes deliberate indifference.

Plaintiff's Opposition to Summary Judgment 6 (filed May 26, 2015). This is an argument of counsel, however, and not evidence. There is no evidence in the record that the Facility doctor should have seen Mr. Karov on the day of his surgery or should not have prescribed Tramadol, or that anyone refused to produce any medical records, or that anyone falsified medical records because Mr. Karov contacted his attorney. There is a dispute about the content of some of Mr. Karov's progress notes but that dispute does not change the outcome here. Assuming the truth of Mr. Karov's version of the events, he still has failed to demonstrate a triable issue on his Eighth Amendment claim.

5

*Conclusion*

The claims in this case are based on delays in receiving medication. Without expert medical testimony, Mr. Karov is unable to demonstrate that those delays were caused by negligent breaches of duty on the part of medical professionals. Neither is he able to show that they occurred because of deliberate indifference.

## ORDER

For the foregoing reasons, Defendants' motion for summary judgment is *granted*.

Dated at Montpelier, Vermont this 3rd day of August 2015.


_____
Mary Miles Teachout
Superior Judge

6