**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 19, 2019*
Decided December 19, 2019

**Before**

JOEL M. FLAUM, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 19-1351

| | |
|---|---|
| ALFREDO GARCIA, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 17-C-1075 |
| | |
| ARMOR CORRECTIONAL HEALTH | Lynn Adelman, |
| SERVICE, INC., et al., | *Judge.* |
| *Defendants-Appellees*. | |

**O R D E R**

While held in the Milwaukee County Jail, Alfredo Garcia slipped on water overflowing from his toilet and was knocked unconscious. He regarded the care that he received for his injuries to be insufficient, and so he brought this deliberate-indifference suit against various jail employees; the Milwaukee County Sheriff; and Armor Correctional Health Service, Inc., the private entity contracted to provide medical care

---

* We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

at the jail. Both sides moved for summary judgment, and the district court entered judgment for the defendants. We affirm.

At the time that Garcia entered confinement at the Milwaukee County Jail in late 2016, he was recovering from a recent surgery on his lower back. He had suffered a long history of back problems stemming from an industrial accident in the 1970s. He used a walker, a back brace, and two knee braces.

Five days after his arrival at the jail, on a Saturday evening, he noticed water flowing out of his toilet. He notified a correctional officer, who called the control center to request that the water be cleaned up. At some point between 8:15 and 8:40 p.m., Garcia slipped, fell, hit his head, and lost consciousness.

Around 8:40, Latisha Aikens, a correctional officer, noticed Garcia on the floor of his cell and immediately called for assistance. Within minutes, three other officers and Cary Adriano, a registered nurse, rushed to the cell. Garcia says that they left him "laying in urine and poop filled water before … attend[ing] to him." Adriano examined Garcia and saw a "small goose egg" sized bump on the back of his head, but noted that he was alert, his pupils looked normal, and he could move his arms and legs. After determining that Garcia was stable, Adriano called the jail's advanced registered nurse practitioner, who provided several instructions: give Garcia antihypertension medication, check his blood pressure, schedule an appointment with an outside provider for further evaluation on Monday, conduct neurological checks twice daily for three days, and provide Tylenol as needed for three days. Garcia asked to go to the hospital but was told he could not because the jail was understaffed.

The next day, Garcia filed a grievance, complaining that the medical staff had not taken him to the hospital after his fall. He also submitted a non-emergency healthcare request form, stating that his fall necessitated medical attention—"maybe x-rays." Around this time, a notation was made in his medical file indicating that an appointment needed to be scheduled so that he could be seen by an outside provider. Three days later he was transferred to a Wisconsin state prison, without any appointment made or his grievance addressed.

Eight months later he was diagnosed with "severe disk disease" in his cervical spine—the direct result, he contends, of the defendants' failure to provide him adequate medical care after his fall.

Garcia then filed this Eighth Amendment suit against the defendants for not sending him to the hospital. He also brought a *Monell* claim against Armor Correctional Health Service, the jail's private medical provider, and David Clarke, the Milwaukee County Sheriff, for maintaining a policy or widespread custom of understaffing the jail. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

The parties cross-moved for summary judgment, and the district court entered judgment in favor of the defendants. Regarding Garcia's claims against the correctional officers, the court determined that they were entitled to reasonably rely on the treatment decisions of the jail's healthcare professionals. Concerning Garcia's claims against Nurse Adriano, the court concluded that Garcia's mere disagreement with his treatment was insufficient to establish that Adriano was deliberately indifferent. Finally, as to Garcia's *Monell* claims against Armor and Clarke, the court determined that Garcia failed to produce any evidence showing that the jail was understaffed as a matter of custom or policy. Even if he had, the court continued, Garcia had no evidence that Clarke or Armor knew about the understaffing and failed to act.

On appeal, Garcia first challenges the entry of summary judgment on his Eighth Amendment claim that the non-medical officers and Nurse Adriano delayed treating him and provided inadequate care. The treatment must have been deficient, he maintains, because he was later diagnosed with severe disk disease.

Prison officials are deliberately indifferent if they know of and disregard an excessive risk to an inmate's health or safety, *Farmer v. Brennan*, 511 U.S. 825, 837 (1994), but Garcia presented no evidence that the defendants responded to his injury with indifference. When Aikens noticed Garcia lying on the cell floor, she called for assistance, and other officers and Nurse Adriano rushed to the scene, examined Garcia, and deemed him stable. Garcia may have disagreed with Adriano's decision (made in consultation with the advanced nurse practitioner) not to send him to the emergency room, but mere disagreement with a medical provider's course of treatment is generally insufficient to show deliberate indifference. *See Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019). Adriano followed up her initial evaluation of Garcia with a treatment plan over the next three days that included neurological checks and pain medication, as well as an appointment to be scheduled for Garcia to be seen by an outside provider (the appointment never took place because Garcia was promptly transferred to a state prison). These actions do not reflect that Adriano departed substantially from accepted professional judgment, *see Wilson v. Adams*, 901 F.3d 816, 822 (7th Cir. 2018); and the

other officers—who are not medical professionals—were entitled to reasonably rely on Adriano's medical judgment. *See Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019).

Next, Garcia contends that summary judgment on his *Monell* claims was improper because a factual dispute exists over whether Armor or Clarke knew about the jail being understaffed and failed to fill vacant positions. Under *Monell,* however, Garcia needed to present evidence sufficient for a jury to find that the company had systemic staffing deficiencies that policymakers knew about but failed to correct. *See Dixon v. Cook Cty.*, 819 F.3d 343, 348 (7th Cir. 2016). (This circuit's case law extends *Monell* from municipalities to private corporations. *See Shields v. Ill. Dept. of Corrs.*, 746 F.3d 782, 796 (7th Cir. 2014).) Although Garcia reports being told that the jail was understaffed on the night he fell, he failed to adduce evidence to suggest that any understaffing was systemic. Even if he had, he has not demonstrated that Armor or Clarke knew about the problem. Summary judgment was therefore warranted for Clarke and Armor.

Finally, Garcia argues that the district court erred by not admitting into evidence security camera footage from inside the jail that, he says, shows that the defendants left him lying in wastewater until they retrieved towels before providing him any treatment. The district court deemed the video inadmissible because neither party submitted an affidavit identifying it. "A party seeking to admit evidence must first establish a foundation for its authenticity." *United States v. Brewer*, 915 F.3d 408, 416 (7th Cir. 2019); FED. R. EVID. 901. Although Garcia alluded to a video in his declaration, he did not explain how he obtained it, when he obtained it, or how he knew that it contained what he purported it did. It appears that he mailed a USB drive containing the video to the district court without explanation. Under these circumstances, the court properly declined to admit the video into evidence.

We have considered Garcia's remaining arguments (including his unsubstantiated claim that the defendants forged his medical records), and none has merit.

AFFIRMED